KIRCOS v LOLA CARS LIMITED

Docket No. 78-5218. Submitted June 19, 1979, at Detroit. Decided May 6, 1980.

Louis Kircos and Donald J. Brodowicz brought an action for damages for injuries allegedly incurred when the tire which they were inflating exploded. Lola Cars Limited, the British manufacturer of the wheel of the car on which the tire was being mounted, and Carl A. Haas Automobile imports, importer of Lola race cars and products, were named as defendants along with others. The injuries to plaintiffs, Michigan residents, occurred in Wisconsin. Defendant Haas had previously been determined to have carried on a continuous and systematic part of its business in the State of Michigan and was thus subject to the jurisdiction of the courts of this state, even though Haas was not licensed to do business in this state and the car in question was sold by Haas in California and was never within the State of Michigan. See *Kircos v Goodyear Tire & Rubber Co*, 70 Mich App 612; 247 NW2d 316 (1976). Defendant Haas was the exclusive importer and distributor of Lola cars and products in North America under a contract which provided that Haas "may appoint sub-agents in the designated territory". The three-year contract provided that it might be renewed for a further three years. Defendant Lola moved to quash the complaint or for accelerated judgment on the basis of lack of jurisdiction over Lola. The trial court denied the motion on the basis that there was a question of fact as to whether an agency relationship existed between Haas and Lola and that question would have to be resolved by a jury. Lola sought leave to appeal to the Court of Appeals, which was denied. Lola then sought leave to appeal to the Supreme Court, which, in lieu of granting leave to appeal, remanded to the trial court with instructions that the trial court determine the jurisdictional question as a preliminary matter of law after an evidentiary hearing. See *Kircos v Goodyear Tire & Rubber Co*, 403 Mich 802 (1978). Following an evidentiary hearing, the Wayne Cir-

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 875.
[2, 3] 36 Am Jur 2d, Foreign Corporations § 316 *et seq.*

cuit Court, Thomas J. Foley, J., denied Lola's motion on the basis that general jurisdiction was acquired by Michigan courts by reason of an agency relationship between Lola and Haas. Judge Foley also determined that Michigan courts could not assert limited personal jurisdiction. Lola appeals by leave granted. *Held:*

1. Findings of fact by a trial court relative to whether there is a basis upon which the courts of this state can assert jurisdiction over a defendant will not be set aside unless the findings of fact are clearly erroneous and the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed.

2. The right of the courts of this state to assert jurisdiction over a nonresident corporation is dependent upon establishing that the foreign corporation had sufficient contacts in this state. The foreign corporation must actually be present within this state on a regular basis, either personally or through an independent agent.

3. The trial court erred in finding that an agency relationship existed between defendant Lola and defendant Haas such that Lola could be said to have sufficient contacts in this state to establish in the courts of this state general jurisdiction over defendant Lola. Neither the renewable nature of the contract between Haas and Lola nor the use of the term "sub-agent" in that contract is sufficient to create the necessary agency relationship in view of the remaining evidence which supports a finding that no agency relationship existed.

4. The trial court properly determined that jurisdiction over defendant Lola was not acquired pursuant to the limited personal jurisdiction statute.

Reversed in part, affirmed in part.

1. APPEAL — FINDINGS OF FACT — JURISDICTION — CLEARLY ERRO-
    NEOUS — COURT RULES.
    Findings of fact made by a trial court relative to whether there is
      a basis upon which the State of Michigan can assert jurisdic-
      tion over a defendant will not be set aside unless those findings
      of fact are clearly erroneous and the reviewing court, on the
      entire evidence, is left with the definite and firm conviction
      that a mistake has been committed (GCR 1963, 517.1).

2. COURTS — JURISDICTION — NONRESIDENT PARTIES — CORPORATIONS
    — MINIMUM CONTACTS.
    The right of the courts of this state to assert jurisdiction over a
      nonresident corporation is dependent upon establishing that

the foreign corporation had sufficient contacts in this state; the foreign corporation must actually be present within this state on a regular basis, either personally or through an independent agent.

3. COURTS — JURISDICTION — NONRESIDENT PARTIES — CORPORATIONS — AGENCY — RIGHT OF CONTROL.

A British race car manufacturer which consummates in England the sale of its race cars to its American importer does not have sufficient contacts with the State of Michigan to confer jurisdiction on the courts of this state over that manufacturer, even though the American importer has sufficient contacts in this state, where there is no significant control over the importer by the manufacturer; neither the use of the term "sub-agents" in the contract between a manufacturer and an importer nor the fact that the contract is renewable create an agency relationship sufficient to confer jurisdiction on the court of this state where, in fact, the right to control is missing.

*Clark, Klein, Winter, Parsons & Prewitt* (by *David M. Hayes* and *David H. Paruch*), for plaintiffs.

*Davidson, Gotshall, Kohl, Secrest, Wardle, Lynch & Clark* (by *Robert R. Rekiel* and *Mary Ann Zito*), for defendant Lola Cars Limited.

Before: N. J. KAUFMAN, P.J., and D. C. RILEY and J. X. THEILER,* JJ.

PER CURIAM. Defendant Lola Cars Limited appeals by leave granted from the trial court's decision that it is subject to the jurisdiction of Michigan courts under MCL 600.711; MSA 27A.711.

Lola manufactures race cars and related products in England. All Lola products imported into the United States were purchased in England by Carl A. Haas Automobile Imports, Inc. Haas was the exclusive North American importer and distributor of Lola products under a written contract

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

executed between them. The contract provided that Haas "may appoint sub-agents in the designated territory", and it also provided for renewal at the end of three years at the option of either party. Lola was given renewal option rights of control over operations of Haas.

In a prior, related case, *Kircos v Goodyear Tire & Rubber Co,* 70 Mich App 612; 247 NW2d 316 (1976), this Court found that the defendant, Haas, carried on a continuous and systematic part of its general business within the State of Michigan; and, thus, Michigan courts could properly assert general personal jurisdiction over Haas.

In the instant case, the trial court found that Haas was the agent of Lola, and thus general personal jurisdiction was conferred on Michigan courts over Lola by reason of the agency relationship, since Lola, through its agent, Haas, was carrying on a continuous and systematic part of its general business within the state. MCL 600.711(3); MSA 27A.711(3). However, the trial court found Michigan courts could not assert limited personal jurisdiction over Lola under MCL 600.715; MSA 27A.715.[1]

On appeal, defendant Lola argues that no agency relationship exists between it and the distributor, Haas, and, absent such an agency relationship, Michigan courts have no basis to assert jurisdiction over Lola pursuant to MCL 600.711; MSA 27A.711. We agree and find the trial court clearly erred in finding such a relationship.

The scope of review of a trial court's decision is specified by GCR 1963, 517.1, as follows:

[1] The car in question was purchased by Haas in England, was sold in California, and was never within the State of Michigan, and the accident which injured the plaintiffs, Michigan residents, occurred in Wisconsin.

"Findings of fact shall not be set aside unless clearly erroneous."

The standard is amplified by the classical statement as found in *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976):

" '[A] finding of fact [by a court sitting in a bench trial] is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' "

Reversal follows where the reviewing court finds such error, *National Car Rental v S & D Leasing, Inc,* 89 Mich App 364; 280 NW2d 529 (1979).

In *People v Bruce Ramsey,* 89 Mich App 468, 474; 280 NW2d 565 (1979), it is stated: "[T]he evidence in a nonjury case is subject to a more rigorous review than that in a jury case", citing *Schneider v Pomerville,* 348 Mich 49, 54-55; 81 NW2d 405-408 (1957).

There have been suggestions that Michigan, by its statutory provisions relative to which corporations are subject to its jurisdiction, intends to extend its power to the full constitutional limit. In considering the "Underlying Theory of RJA Chapter 7", Honigman and Hawkins state:

"This underlying theory, which contemplates the optimum use of the state's judicial power to protect its citizens and others having basic ties with the state, is sanctioned by contemporary decisions of the United States Supreme Court." 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 123.

Unless clearly erroneous, it may well be that a trial court's finding of facts is determinative as to

what were the acts and activities of a defendant within the jurisdiction, but a trial court's determination that such activities are sufficient to bring a corporation within the jurisdiction of the court is a legal question subject to direct review.

"The minimum amount of activity which a foreign corporation may have within a state so as to be amenable to suit there, should the state choose to subject it to process, is a matter of constitutional law governed, in the last resort, by the supreme court." 16A CJS, Constitutional Law, § 616, p 781.

Since *Pennoyer v Neff,* 95 US 714; 24 L Ed 565 (1877), it has been recognized that failure to properly acquire jurisdiction over a defendant renders any judgment null and void as being a denial of due process. It is not only a question of service of process or notice, but also a question of whether or not the exercise of jurisdiction by the court is proper under the circumstances.

Whether a state can assert jurisdiction over a nonresident must be evaluated according to certain minimum-contact standards, *International Shoe Co v Washington,* 326 US 310; 66 S Ct 154; 90 L Ed 95 (1945), *Shaffer v Heitner,* 433 US 186; 97 S Ct 2569; 53 L Ed 2d 683 (1977).

Where a corporation is involved, testing whether it is present within a state will require, in almost all instances, a determination that it was present because of the presence of a person who was its agent.

As stated in *International Shoe Co v Washington, supra,* at 316-317:

"Since the corporate personality is a fiction, although a fiction intended to be acted upon as though it were a fact, it is clear that unlike an individual its 'presence'

without, as well as within, the state of its origin can be manifested only by activities carried on in its behalf by those who are authorized to act for it. To say that the corporation is so far 'present' there as to satisfy due process requirements, for purposes of taxation or the maintenance of suits against it in the courts of the state, is to beg the question to be decided. For the terms 'present' or 'presence' are used merely to symbolize those activities of the corporation's agent within the state which the courts will deem to be sufficient to satisfy the demands of due process." (Citations omitted.)

and at 319:

"It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations.

"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue." (Citations omitted.)

1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), 1979 Supp, p 39 states:

"[O]ne of the most unsettled but rapidly expanding problems is the application of expanded state jurisdictional statutes to obtain personal jurisdiction over nonresidents in product liability cases."

Where the relationship to the state is too attenuated, jurisdiction is not present. A foreign corporation must actually be present within the forum state on a regular basis, either personally or through an independent agent, in order to be subjected to general personal jurisdiction, *Storie v Beech Aircraft Corp,* 417 F Supp 141, 145 (ED Mich, 1976).

This is not a case where the product involved was brought into the state. While the car in question was manufactured by Lola, it was never brought into this state. Haas, which sold the car, has been established as being present within the state on a regular basis. Is the relationship of Haas to Lola such that we may also say that Lola has been exercising the privilege of conducting activities within the state and enjoying the benefits and protection of the laws of this state such that there were sufficient contacts or ties within the state so as to make it reasonable and just to enforce obligations elsewhere incurred? We conclude that that relationship is too attenuated and remote to justify finding that the exercise of jurisdiction by the courts of this state is within the ambit of due process and is not violative of traditional notions of fair play and substantial justice, *Shaffer v Heitner,* 433 US 186; 97 S Ct 2569; 53 L Ed 2d 683 (1977).

A corporation is not "present" merely because goods that it has manufactured and sold are within a jurisdiction, absent an incident creating a limited jurisdiction, under RJA § 715. The fact that the corporation knows that purchasers of its

products will be continuously selling its products within a jurisdiction does not mean that it is carrying on a continuous and systematic part of its general business within the state, as required by RJA § 711. The fact that this is done through an exclusive importer and distributor of its products does not mean that the importer and distributor is, per se, the corporation's alter ego: the establishment of such a relationship does not carry the legal significance of the vow "whither thou goest, I will go".[2] We look rather to see if there were activities carried on in the corporation's behalf by those who are authorized to act for it.

The facts of the instant case indicate that Haas was not an agent of Lola. Haas contracted with Lola to be the sole importer and distributor of Lola racing cars and spare parts into the North American continent. However, Haas' methods were not subject to the control of Lola, nor was the result of Haas' work.

The contract between Haas and Lola included a discretionary renewal clause, which stated:

"This contract may be renewed for a further 3 years subject to one year's written notice to this effect by either party."

Although the trial court found this renewal clause to represent a significant amount of control on the part of Lola, we disagree and rule that the trial court's finding was clearly erroneous. First, the renewal clause gave no control to Lola over Haas *during* the contract period. Secondly, since the renewal option was subject to written notice by either party, it did not give any control to Lola.

The trial court also assumed that since the term

---

[2] *Ruth* 1:16 (King James).

"sub-agents" was present in the contract between Lola and Haas, it therefore implied that Haas was the agent of Lola. The terms parties use to designate their relationships are not controlling. See *Lincoln v Fairfield-Nobel Co,* 76 Mich App 514, 520; 257 NW2d 148 (1977). Since there were no other facts presented indicating that Lola had the right to control over Haas, it is clear that Haas was not acting as an agent of any kind on behalf of Lola. See *Birou v Thompson-Brown Co,* 67 Mich App 502, 507; 241 NW2d 265 (1976). Accordingly, Michigan courts have no basis upon which to assert jurisdiction over Lola by means of MCL 600.711; MSA 27A.711.

Plaintiffs argue on appeal that the trial court erred in finding a lack of limited personal jurisdiction over Lola by means of MCL 600.715; MSA 27A.715. We disagree. We are convinced that *Clavenna v Holsey,* 81 Mich App 472; 265 NW2d 378 (1978), is also applicable to corporate defendants and, thus, is dispositive of this issue.

Reversed in part, affirmed in part.

No costs, neither party having prevailed in full.