Raymond & Marjorie NELLIGAN, Steven L. & Helen G. Kish, Marvin & Margaret Bullion, Vincent & Cecile Schikora, Albert W. & Wanda J. Chamberlin, Robert K. & Elizabeth Tilley, Arthur & Helen Cull, Robert E. & Mary Furby, Patrick Gainer, Howard L. & Lenore Hicks, Bernard & June Stephenson, Charles H. & Fay J. Taylor, Joseph C. & Veda M. LaCelle, Plaintiffs,

v.

JOHNS–MANVILLE SALES CORPORATION, Rock Wool Manufacturing Company, Inc., et al, Defendants.

Civ. Nos. 80–72181 to 80–72188, 80–72190 to 80–72192, 80–72194 and 80–72195.

United States District Court, E. D. Michigan, S. D.

Jan. 21, 1982.

. Michael B. Serling, Southfield, Mich., Sweeney, Mahon & Vlad, Cleveland, Ohio, for plaintiffs; Robert E. Sweeney, Cleveland, Ohio, of counsel.

Dickinson, Wright, McKean, Michale G. Vartanian, Detroit, Mich., Plunkett, Cooney, Rutt, Southfield, Mich., for defendants; Fred W. Gerow, Southfield, Mich., of counsel.

## ON MOTION TO DISMISS COMPLAINT AND TO QUASH SERVICE OF PROCESS

THORNTON, District Judge.

The Court has before it for determination the motion of Defendant Rock Wool Manufacturing Company, Inc. to dismiss the Complaint of plaintiffs herein against it and to quash service of process upon it. Plaintiffs herein have brought suit in this Court against a number of defendants, including Defendant Rock Wool, for injuries allegedly suffered by them as a result of exposure to products containing asbestos. It is undisputed that Rock Wool is an Alabama Corporation having its principal place of business in Leeds, Alabama. In its motion Defendant Rock Wool states, at Paragraphs 2, 3 and 4 thereof as follows:

2. That at all times material to this lawsuit, Rock Wool Manufacturing Company, Inc. had no significant contacts with the State of Michigan, therefore, this Court cannot exercise *in personam* jurisdiction over Rock Wool Manufacturing Company, Inc. pursuant to MSA 27A.715, the Michigan Long Arm Statute applicable to corporations.

3. Any exercise of this Courts *in personam* jurisdiction over Rock Wool Manufacturing Company, Inc. would violate the due process clause of the Fourteenth Amendment of the Constitution of the United States of America.

4. This Motion is supported by the Affidavit of George C. Cusick, Vice President of Rock Wool Manufacturing Company, Inc. and by the Brief in Support of the Motion herewith and incorporated herein by reference. ·

The Affidavit of George C. Cusick adverted to above in Paragraph 4 reads as follows:

GEORGE C. CUSICK, being duly sworn, states:

I am the vice-president of Rock Wool Manufacturing Company and have held that position since 1958. As such, I am familiar with the operation of Rock Wool and, more specifically, of the matters set forth in this affidavit. If called as a witness, I could testify competently as follows:

1. Rock Wool Manufacturing Company is a corporation organized under the laws of the State of Alabama. It is a closely held corporation, owned and operated by members of two families. I am vice-president of Rock Wool; my father, Ed Cusick, Sr., is president. Rock Wool's gross sales for 1979 will amount to approximately eight million dollars.

2. Rock Wool is in the business of manufacturing insulation products for home and industrial use. All of its manufac-

turing facilities are located in Leeds, Alabama. In addition, all of our corporate offices are at the same location in Leeds. Rock Wool sells its products principally in the southeastern portion of the United States. Those products are sold primarily to insulating contractors who use those products in their construction activity. To the best of our knowledge, there have been no direct sales, resales, or other distribution of our products to Michigan other than as set forth in paragraphs 4 and 5.

3. Rock Wool has been in business since 1943. From that date until 1958, it did business as a partnership. In 1958, it became a corporation. I have been associated with Rock Wool since 1956. In addition, I have made a careful search of the records of the company. I am therefore able to state the following with respect to the relationship of Rock Wool to the State of Michigan.

a. Rock Wool has never owned, leased, or rented real property in the State of Michigan.

b. Rock Wool has never had a business license issued by any municipality in the State of Michigan.

c. Rock Wool has never been qualified to do business in the State of Michigan nor has it made an application with the Michigan Secretary of State for such qualification.

d. Rock Wool has never had a Michigan sales tax number, filed a Michigan sales tax return, or collected any Michigan sales tax.

e. Rock Wool has never filed an income tax return with the Michigan Franchise Tax Board or paid any Michigan franchise tax.

f. Rock Wool has never had any employee whose permanent place of residence was in Michigan. It has never withheld from the wages of any employee any Michigan state income tax or Michigan state disability insurance, paid any Michigan unemployment tax, or filed any employment tax return with respect to such items.

g. Rock Wool has never appointed an agent for service of process in Michigan.

h. Rock Wool has never had a telephone listing in the State of Michigan.

i. Rock Wool has never had an office in the State of Michigan.

j. Rock Wool has never maintained any books of account in the State of Michigan.

k. Rock Wool has never advertised in any periodical which is local to Michigan or has its primary circulation in the State of Michigan. It has, however, on occasion, done limited advertising in a national trade journal which I understand does have some circulation in the State of Michigan. Such advertising is directed at potential customers in the southeastern part of the United States where Rock Wool does its principal business. It appears in Michigan only because there is no edition of the journal in which we can limit our advertising to the southeastern part of the United States.

l. Rock Wool has never maintained a bank account, either checking or savings, in the State of Michigan.

m. Rock Wool has never had any manufacturing facility in the State of Michigan.

n. Rock Wool has never purchased any raw materials from Michigan.

o. The stock of Rock Wool has never been registered in Michigan nor offered for sale in Michigan. As I previously explained Rock Wool is a small family concern with its stock owned by members of two families.

4. During the time it has been in business, Rock Wool has manufactured only one type of product containing any asbestos. That product is a Rock Wool insulating cement. Its principal use is for pipe insulation in areas where the shape of the pipe makes it impractical to use rigid sheet insulation. Examples of these would be areas involving fittings and valves.

Except for the period from 1958 through 1970, the cement was manufactured without any asbestos. During the period from 1958 through 1970, the One Shot and High Temp Master cement manufactured by Rock Wool contained less than one-half of one percent asbestos by weight (or .5 lbs. per 100 lbs.).

I have reviewed all of the records for sales of this cement which are in the possession of Rock Wool. They date back to 1958. Those records, together with my own personal knowledge, show that the only year in which any of the cement was shipped to Michigan was 1969. That sale was as follows:

| Invoice Number | Invoice Date | Purchaser | No. of Bags |
|---|---|---|---|
| 25311 | 10/28/69 | Trans World Dallas, TX | 10 (500 lbs). |

The total amount of this sale was only $42.00.

5. Rock Wool does on occasion receive orders for some of its products from persons or businesses in Michigan. These come rarely and the amount of money involved is small. In order to determine the amount of these sales, I have gone through the ledger cards which Rock Wool maintains for each of its customers and have located those relating to customers in Michigan. Except for the sales set forth in paragraph 4, *none* of the products sold contained asbestos. The following table shows for the years from 1960 through 1979, the dollar amount of Rock Wool's total and Michigan sales, together with Michigan sales as a percentage of total sales.

| | TOTAL SALES | SALES TO MICH. * | % OF TOTAL |
|---|---|---|---|
| 1979 | $ 7,551,707 | 0 | 0 |
| 1978 | 7,400,977 | 255.00 | .00331 |
| 1977 | 6,274,270 | 0 | 0 |
| 1976 | 5,284,833 | 162.50 | .00307 |
| 1975 | 4,742,707 | 136.00 | .0028 |
| 1974 | 4,422,351 | 0 | 0 |
| 1973 | 3,826,733 | 90.00 | .00235 |
| 1972 | 3,535,740 | 63.36 | .00179 |
| 1971 | 2,676,210 | 316.00 | .0118 |
| 1970 | 2,145,639 | 1047.00 | .048 |
| 1969 | 2,203,241 | 935.00 | .042 |
| 1968 | 1,712,013 | 574.88 | .0335 |
| 1967 | 1,588,780 | 309.00 | .019 |
| 1966 | 1,641,624 | 0 | 0 |
| 1965 | 1,627,880 | 0 | 0 |
| 1964 | 1,712,217 | 0 | 0 |
| 1963 | 1,697,556 | 0 | 0 |
| 1962 | 1,687,386 | 0 | 0 |
| 1961 | 1,334,718 | 0 | 0 |
| 1960 | 1,087,654 | 0 | 0 |

* See attached invoices

6. All sales by Rock Wool, whether to Michigan or to any other part of the nation, are made on the basis of F.O.B. Leeds, Alabama. It is the responsibility of the customer to bear this expense.

7. I have attended one industry association meeting which was held in Michigan.

<u>(signed)</u>
GEORGE C. CUSICK

Subscribed and sworn to before me this 3rd day of October, 1980
(signed) _____
NOTARY PUBLIC

Plaintiffs herein oppose defendant's motion (said motion having been argued and briefed by counsel for the respective parties) contending that "[t]here is ample evidence to establish grounds for this Court to exercise personal jurisdiction over defendant based upon three (3) out of the five (5) conditions contained in the requisite statute, M.C.L.A. § 600.715; M.S.A. § 27A.715, specifically, (1), (2) and (5)." Said statute setting forth the circumstances when the Court may exercise personal jurisdiction are stated in M.C.L. § 600.715; M.S.A. § 27A.715 as follows:

The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:

(1) The transaction of any business within the state.

(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

(3) The ownership, use, or possession of any real or tangible personal property situated within the state.

(4) Contracting to insure any person, property or risk located within this state at the time of contracting.

(5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

In their Brief in Opposition to Motion of Defendant Rock Wool Manufacturing Co., Inc. (at pages 2 and 3 thereof) plaintiffs advance the following reasoning in support of their position that the Court should exercise personal jurisdiction over defendant nonresident corporation:

Plaintiffs have obtained abundant evidence to indicate that although Rock Wool is an Alabama company, it has sold its products north of the Mason-Dixon Line, in the Great Lakes Basin area. There is abundant evidence that Rock Wool has sold its products in Ohio, Indiana and Illinois.

Plaintiffs have evidence that Rock Wool has sold its products in the Lansing area by way of admission of counsel for Rock Wool.

Further, Rock Wool has admitted in other asbestos products liability suits that it has sold asbestos containing products in Ohio, Indiana and Illinois.

Further, Plaintiff, Robert E. Furby, has filed his Affidavit, attached hereto, indicating that he used Master Insulating Cement, a product of Rock Wool Manufacturing Company, Inc., in the metropolitan Detroit area.

There is ample evidence to establish grounds for this Court to exercise personal jurisdiction over Defendant based upon three (3) out of the five (5) conditions contained in the requisite statute, M.C.L.A. § 600.715; M.S.A. § 27A.715, specifically, (1), (2) and (5).

Rock Wool has transacted business within the State of Michigan. Rock Wool has done or caused an act to be done, or consequences to occur in the State of Michigan, resulting in an action for tort. Rock Wool has entered into a contract for services to be performed or for materials to be furnished in the State of Michigan by Rock Wool.

Defendant, Rock Wool, claims that there is not sufficient minimum contacts with the State of Michigan to justify the exercise of personal jurisdiction over Rock Wool, a foreign corporation, thus violative of the due process clause of the 14th Amendment of the Constitution of the United States.

The recent decision of the Michigan Court of Appeals in *Kircos v. Lola Cars Limited*, 97 Mich.App. 379, 296 N.W.2d 32 (1980) is instructive with respect to the issue here presented. We set forth below pertinent excerpts therefrom:

Whether a state can assert jurisdiction over a nonresident must be evaluated according to certain minimum-contact standards, *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)

Where the relationship to the state is too attenuated, jurisdiction is not present. A foreign corporation must actually be present within the forum state on a regular basis, either personally or through an independent agent, in order to be subjected to general personal jurisdiction. *Storie v. Beech Aircraft Corp.* 417 F.Supp. 141, 145 (E.D.Mich.1976).

A corporation is not 'present' merely because goods that it has manufactured and sold are within a jurisdiction, absent an incident creating a limited jurisdiction, under RJA § 715. The fact that the corporation knows that purchasers of its products will be continuously selling its products within a jurisdiction does not mean that it is carrying on a continuous and systematic part of its general business within the state, as required by RJA § 711.

An even more recent opinion[1] appears in the case of *Doebler v. Stadium Productions Ltd.* 91 F.R.D. 211 (W.D. of Mich.S.D.1981) which contains the following relevant holdings:

This Court has previously noted that the due process clause of the Fourteenth Amendment requires that the defendant have such minimum contacts with the forum state that maintenance of an action would not offend traditional notions of fair play and substantial justice. *Speckine v. Stanwick International, Inc.*, 503 F.Supp. 1055 (W.D.Mich.1980). Accord, *Chrysler Corp. v. Fedders Corp.* 643 F.2d 1229, 1236 (6th Cir. 1981).

The Sixth Circuit has applied a three-part test for determining whether a given set of circumstances provides sufficient contact between a nonresident defendant and the forum state to support personal jurisdiction:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

A purposeful availment requires involvement with the state through actions freely and intentionally done—something more than a situation where all contacts result entirely from a decision made by the plaintiff. *Davis H. Elliot Co.* [*v. Caribbean Utilities Co.*] 513 F.2d [1176] at 1182. Even considering the facts in the light most favorable to Van Boven, it is apparent that Kirk's actions do not satisfy this requirement.

After purposeful availment, the second element of the Sixth Circuit's test is that the cause of action must arise from the defendant's activities in the forum state. This requirement is clearly not satisfied in this case.

The third criterion is that the defendant's activities must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. Kirk's letters and alleged phone calls were not a very substantial connection with Michigan.

We do not understand the relevancy of the "abundant evidence" which plaintiffs say[2] indicates that Rock Wool has sold its products in Ohio, Indiana and Illinois. We do not understand the relevance of admission by Rock Wool "in other asbestos products liability suits that it has sold asbestos containing products in Ohio, Indiana and Illinois." The issue here is the Michigan Long Arm Statute and personal jurisdiction in Michigan, not in Ohio, in Illinois or in Indiana. The fact that Plaintiff Robert E. Furby states in his Affidavit[3] that he recalls *using*[4] Master Insulating Cement[5] "in the metropolitan Detroit area, State of Michigan for a short period of time between 1949 and 1954" appears to this Court to be of irrelevant significance in light of the holdings in *Kircos* and *Doebler, supra*. Based on the foregoing, on the rationale in *Kircos* and *Doebler, supra* and in the cases cited in those opinions this Court concludes that there is no basis for the exercise of personal jurisdiction over Defendant Rock Wool Manufacturing Company, Inc. by means of M.C.L. § 600.711; M.S.A. § 27A.711.

An order may be presented accordingly.

---

1. By Judge Benjamin F. Gibson.

2. At Page 2 of their Brief in Opposition

3. Attached to Plaintiffs' Brief in Opposition

4. Emphasis supplied

5. A product of Rock Wool