# STATE OF MICHIGAN

# COURT OF APPEALS

BETH ANN SMITH, Individually and as Personal Representative of the Estate of STEPHEN CHARLES SMITH and the Estate of IAN CHARLES SMITH, and GOODMAN KALAHAR, PC,

UNPUBLISHED
May 14, 2015

Plaintiffs-Appellees,

v

No. 318326
Wayne Circuit Court
LC No. 13-010880-CK

BABBITT, JOHNSON, OSBORNE & LE CLAINCHE, PA,

Defendant-Appellant,

and

AUTO-OWNERS INSURANCE COMPANY,

Defendant.

Before: BECKERING, P.J., and JANSEN and BOONSTRA, JJ.

PER CURIAM.

Defendant[1] Babbitt, Johnson, Osborne & Le Clainche PA ("Babbitt"), a law firm incorporated in Florida, appeals by leave granted[2] the trial court's order denying its motion for summary disposition in this dispute regarding attorney's fees. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises from a dispute between two law firms regarding a fee-sharing agreement. On May 8, 2005, plaintiff Beth Ann Smith ("Smith") was involved in an automobile accident

---

[1] Defendant Auto-Owners Insurance Company is not a party to this appeal.

[2] *Smith v Babbitt, Johnson, Osborne PA*, unpublished order of the Court of Appeals, entered November 20, 2013 (Docket No. 318326).

-1-

near Daytona Beach, Florida. As a result of the accident, Smith's husband and son were killed, and Smith suffered catastrophic injuries. At the time of the accident, Smith was a Florida resident; however, she moved to Michigan in early 2006. At some point in 2005, after the accident, Smith approached Goodman Kalahar, PC ("Goodman"), a law firm based in Michigan, regarding potential litigation arising out of her injuries and the deaths of her family members. In May 2006, Smith and Goodman entered into a Retainer Agreement, pursuant to which Smith retained Goodman to represent her, individually and as the personal representative of the estates of her deceased family members, and to pursue a claim for damages against any parties liable as a result of the auto accident.

Between 2006 and 2008, Goodman pursued a personal injury suit in Florida against the estate of Jerry S. Johnson, Jr., another driver involved in the auto accident. In mid-2008, Goodman successfully negotiated a $10 million settlement in the personal injury suit against the estate. Goodman informed Smith that it would pursue further legal proceedings against Johnson's insurer, Auto-Owners Insurance Company ("Auto-Owners"), in order to collect the full amount of the settlement. In August 2008, Auto-Owners filed suit in Florida's Volusia Circuit Court ("the Florida court") for declaratory judgment against Smith, seeking a declaration that there was no insurance coverage for the auto accident that would obligate it to pay any amount to Smith. Smith then filed her own suit, also in Florida, against Auto-Owners seeking reimbursement for the injuries suffered in the accident. In October 2008, Goodman approached Babbitt and requested that Babbitt assist in representing Smith in the case against Auto-Owners.

Thereafter, Smith, Goodman, Babbitt, and an appellate Florida law firm, Burlington & Rockenback, PA, entered into the "Addendum to Retainer Agreement" (the "fee-sharing agreement"), which detailed the sharing of fees between the firms. The fee-sharing agreement states that it "is made to supplement" the original Retainer Agreement, describes that the original Retainer Agreement "provides for a $33^1/_3$% attorney's fee," and then provides that "that fee would be divided" among the law firms that were parties to the fee-sharing agreement as follows: $15^1/_6$% would be allocated to Babbitt, $15^1/_6$% would be allocated to Goodman, and 3% would be allocated to Burlington & Rockenback, PA. The fee-sharing agreement is silent regarding the fact that the original Retainer Agreement was signed by Smith and Goodman over two years before the execution of the fee-sharing agreement, that Goodman had pursued litigation in the interim, that a settlement with Johnson's estate had been reached, and that litigation going forward appears to have been limited to that against Auto-Owners. The fee-sharing agreement also stated that "[e]ach of the law firms and the individual attorneys working on the case agree to assume the same legal responsibility to the clients for the performance of the services in question as if the attorneys involved were partners and members of the same firm." Additionally, it stated that "[t]his contract is being entered into under Michigan law and Michigan law shall apply in the event of a dispute with respect to this contract . . . ." Litigation continued from 2008 until June 21, 2013, when the case against Auto-Owners was settled through mediation.

Following Smith's settlement with Auto-Owners, Goodman and Babbitt found themselves at odds over the proper allocation of the attorney's fees under the fee-sharing agreement. Specifically, according to Babbitt, "Goodman demanded a higher percentage than that which was agreed to in the fee-sharing agreement on July 11, 2013." During July and August 2013, Goodman and Babbitt continued to disagree regarding the amount each firm

should be paid by Smith from the total settlement. On August 2, 2013, Babbitt sent Smith a letter in which it asked Smith to provide "an unequivocal response . . . one way or the other as to whether you intend to honor your contractual obligation to our firm." Specifically, Babbitt sought confirmation from Smith that she still planned to pay Babbitt under the terms of the fee-sharing agreement. On August 20, 2013, Goodman sent a letter to Babbitt informing it that it was terminated from further representation of Smith, and also stating that Babbitt had forfeited the right to any attorney's fees under the fee-sharing agreement.

On August 20, 2013, Smith and Goodman filed a complaint in Wayne Circuit Court (the "trial court") against Babbitt, alleging that Babbitt refused to endorse settlement checks from Auto-Owners. Further, Smith and Goodman alleged that Babbitt refused to allow Goodman to place the settlement checks in an interest bearing client trust fund escrow account in Michigan for the purpose of disbursing funds to Smith. Smith and Goodman also alleged that Babbitt was not available to Smith for consultation during the litigation against Auto-Owners, and that Babbitt did not assume equal responsibility with Goodman for the litigation; consequently, Babbitt was not entitled to any attorney's fees. Smith and Goodman also alleged that Babbitt had intentionally inflicted emotional distress on Smith by failing to distribute her settlement funds.

On August 21, 2013, Babbitt filed a "Charging Lien for Attorney's Fees and Costs Against Settlement Proceeds" in the Florida court. On August 22, 2013, Babbitt filed a motion to enforce the attorney's lien in the Florida court.

On August 23, 2013, Smith and Goodman filed a motion for a preliminary injunction in the trial court, requesting that the court order Babbitt to deliver the portion of the settlement funds to which Smith was undisputedly entitled. Further, Smith and Goodman alleged that Babbitt was illegally withholding Smith's settlement funds until she agreed that she owed Babbitt an attorney fee arising out of the litigation against Auto-Owners.

On August 26, 2013, the trial court issued a temporary restraining order and order to show cause. The trial court ordered that Auto-Owners immediately deliver to Babbitt the settlement checks for endorsement and deposit into a Michigan bank account. Further, the court ordered that Babbitt appear in Wayne Circuit Court to show cause why Smith should not be paid those funds as to which there was no dispute regarding her entitlement, and why the disputed funds should not be kept in a Michigan bank account pending resolution of its dispute with Goodman.

On August 28, 2013, Babbitt filed an emergency motion in the Florida court to determine and confirm jurisdiction over, and distribution of, the settlement funds. In the motion, Babbitt requested that the Florida court enter an order confirming its jurisdiction over the dispute between Goodman and Babbitt. Further, Babbitt argued that the undisputed portion of the funds be immediately delivered to Smith. However, Babbitt requested that the disputed portion of the settlement funds be deposited into a Florida bank account until the dispute between Goodman and Babbitt was resolved in the Florida court.

On September 3, 2013, Babbitt filed in the trial court a motion for summary disposition under MCR 2.116(C)(1), arguing that the court lacked personal jurisdiction over Babbitt.

Babbitt argued that any Michigan court lacked general personal jurisdiction over it because Babbitt is not incorporated under Michigan law, it did not consent to general personal jurisdiction in Michigan, and it did not carry on continuous and systemic parts of its general business in Michigan. Further, Babbitt argued that the trial court lacked specific personal jurisdiction over it because jurisdiction was not authorized under Michigan's long-arm statute, MCL 600.715. Babbitt contended that it did not conduct any business in Michigan; rather, it litigated a Florida case in conjunction with a law firm that happened to be based in Michigan. Babbitt also argued that Michigan's specific personal jurisdiction over Babbitt would not comport with its due process rights under the Fourteenth Amendment, because Babbitt did not purposely avail itself of the privilege of conducting activities in Michigan, the cause of action did not arise from any activity of Babbitt in Michigan, and Michigan's jurisdiction would be unreasonable considering Babbitt's lack of connection with Michigan.

On September 4, 2013, Smith and Goodman responded to Babbitt's motion for summary disposition, arguing that Babbitt fell under the general personal jurisdiction and specific personal jurisdiction of the Michigan trial court regarding the fee-sharing dispute. Specifically, Smith and Goodman argued that the dispute arose out of Babbitt's contacts with Michigan, including entering into the fee-sharing agreement in Michigan with a Michigan choice of law provision. Further, Smith and Goodman argued that Babbitt employees continuously communicated with Smith in Michigan throughout the litigation against Auto-Owners and appeared in Michigan for depositions.

On September 4, 2013, the trial court heard arguments on Babbitt's motion for summary disposition. That same day, the trial court entered an order denying Babbitt's motion for summary disposition. Specifically, the trial court found that that Babbitt was subject to general personal jurisdiction in Michigan because:

> Babbitt Johnson consented to application of Michigan law by including a choice of law provision selecting Michigan law in the fee sharing agreement. Furthermore, Defendant Babbitt Johnson carried on a continuous and systematic part of its general business within Michigan. Babbitt Johnson regularly contacted Goodman Kalahar, a Michigan resident, provided advice to Beth Smith, a Michigan resident until 2011, and even came to Michigan to conduct depositions for the underlying litigation. This Court is satisfied that this constitutes a continuous and systematic part of Babbitt Johnson's general business.

The trial court also found that "it has limited personal jurisdiction over Defendant Babbitt Johnson pursuant to Michigan's Long Arm Statute, MCL § 600.715." The trial court concluded that there was sufficient evidence that Babbitt transacted business in Michigan; specifically, the court found:

> Babbitt Johnson entered a fee sharing agreement with Michigan resident Goodman Kalahar. After drafting this document, Babbitt Johnson presented it to Goodman Kalahar in Michigan. The fee sharing agreement covers legal services to be performed for a client who is a Michigan resident . . . in litigation against another Michigan resident (Auto Owners). The agreement contains a choice of law provision which provides that Michigan law shall govern disputes. Finally,

-4-

Babbitt Johnson frequently contacted Goodman Kalahar in Michigan via phone, email, and other correspondence. Babbitt Johnson attorney Joe Johnson even appeared in Michigan on two separate dates to conduct depositions for the underlying litigation. This Court is satisfied that this evidence establishes that Babbitt Johnson "transacted business" in Michigan.

The trial court also concluded that specific personal jurisdiction over Babbitt comported with Babbitt's due process rights under the Fourteenth Amendment; the court found that Babbitt "had sufficient minimum contacts with Michigan, including all of the contacts listed above, to conclude that Defendant Babbitt Johnson is afforded due process when subjected to Michigan jurisdiction."

On September 17, 2013, the Florida court entered an order staying any further proceedings between the parties before the Florida court until the proceedings in Michigan were concluded. In its order, the Florida court indicated that the undisputed portion of the settlement funds entitled to Smith had been disbursed to her. On September 25, 2013, Babbitt applied to this Court for leave to appeal the Michigan court's denial of its motion for summary disposition.

As lower court proceedings continued, a dispute arose between Smith and Goodman regarding the validity of the Retainer Agreement and the amount of attorney's fees that was owed; that dispute led to Smith's termination of Goodman as her counsel, and also to a change in her position regarding this case. Specifically, Smith moved for the trial court to dismiss her complaint against Babbitt, arguing that Florida law actually applied to the underlying dispute. The trial court adjourned Smith's motion until she could be deposed as part of the continued proceedings. On October 21, 2013, Smith applied with this Court for leave to appeal the trial court's order adjourning her motion to dismiss the complaint.

On November 20, 2013, this Court granted Babbitt's application for leave to appeal, denied Smith's application for leave to appeal, and ordered that further proceedings before the trial court be stayed pending resolution of Babbitt's appeal.[3]

## II. STANDARD OF REVIEW

Babbitt moved for summary disposition pursuant to MCR 2.116(C)(1). "This Court reviews a trial court's grant or denial of summary disposition de novo." *Electrolines, Inc v Prudential Assurance Company, Ltd*, 260 Mich App 144, 152; 677 NW2d 874 (2003). Similarly, "this Court reviews de novo a trial court's jurisdictional rulings." *Id*. "A plaintiff bears the burden of establishing jurisdiction over a defendant; however, the plaintiff need only make a prima facie showing of jurisdiction to defeat a motion for summary disposition." *Oberlies v Searchmont Resort, Inc*, 246 Mich App 424, 427; 633 NW2d 408 (2001). This Court reviews a motion for summary disposition brought under MCR 2.116(C)(1) by considering the

---

[3] *Smith v Babbitt, Johnson, Osborne PA*, unpublished order of the Court of Appeals, entered November 20, 2013 (Docket No. 318326).

"documentary evidence submitted by the parties in a light most favorable to the nonmoving party." *Id*.

### III. GENERAL PERSONAL JURISDICTION

Babbitt first argues that the trial court erred in denying Babbitt's motion for summary disposition because it is not subject to general personal jurisdiction in Michigan. Specifically, Babbitt contends that it is not incorporated in Michigan, has not consented to jurisdiction in Michigan, and does not carry on a continuous and systematic part of its general business within Michigan. We agree.

In Michigan, jurisdiction over a person "may be established by way of general personal jurisdiction or specific (limited) personal jurisdiction." *Electrolines*, 260 Mich App at 166. The "exercise of general jurisdiction is possible when a defendant's contacts with the forum state are of such nature and quality as to enable a court to adjudicate an action against the defendant, even when the claim at issue does not arise out of the contacts with the forum state." *Id*. In considering whether a corporation is subject to general personal jurisdiction in Michigan, this Court looks for the existence of one of three relationships between the corporation and Michigan. *Id*. Those relationships are "(1) incorporation under the laws of this state[4], (2) consent, or (3) the carrying on of a continuous and systematic part of its general business within the state." *Id*. at 166-167; see also MCL 600.711.

"Under Michigan law, personal jurisdiction can be established by consent, to the extent authorized by the consent and subject to the limitations provided in [MCL 600.745]." See *Lease Acceptance Corp v Adams*, 272 Mich App 209, 219; 724 NW2d 724 (2006) (quotation marks and citation omitted). MCL 600.745(2) allows parties to agree in writing that "an action on a controversy may be brought in this state and the agreement provides the only basis for the exercises of jurisdiction" provided certain conditions are met. A corporation's consent to general personal jurisdiction must be explicit, for example through the use of a forum selection clause. *Id*.

Recently, this Court identified factors that may be considered in determining whether a corporation carries on a continuous and systematic part of its general business within the state. See *Glenn v TPI Petroleum, Inc*, 305 Mich App 698, 707-708; 854 NW2d 509 (2014). Specifically, this Court can consider "whether the particular corporate entity has a physical location, officers, employees, or bank accounts in Michigan" and whether a corporation has solicited or procured "sales and purchases within Michigan." *Id*. at 707. Further, whether a corporation's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State" is relevant in determining whether general personal jurisdiction exists. *Id*. at 708, quoting *Goodyear Dunlop Tires Operations, SA v Brown*, 564 US ___, ___; 131 S Ct 2846, 2851; 180 L Ed 2d 796 (2011). Additionally, "[a] foreign corporation must actually be present within the forum state on a regular basis, either personally or through an

---

[4] The parties do not dispute that plaintiff is not incorporated in Michigan, nor did the trial court find that it had general personal jurisdiction based on plaintiff's state of incorporation.

independent agent, in order to be subjected to general personal jurisdiction." *Id.*, quoting *Kircos v Lola Cars Ltd*, 97 Mich App 379, 386-387; 296 NW2d 32 (1980). Ultimately, a defendant is subject to general personal jurisdiction in Michigan if it had "a general plan for conducting business on a regular basis within the state of Michigan." *Id.* at 709.

The trial court found that Babbitt was subject to general personal jurisdiction in Michigan on two grounds: (1) consent, and (2) that Babbitt carried on a continuous and systematic part of its general business within Michigan. Specifically, the court concluded that because Babbitt's fee-sharing agreement with Goodman included a Michigan choice-of-law provision, Babbitt consented to general personal jurisdiction. The court also concluded that because Babbitt "regularly contacted Goodman Kalahar, a Michigan resident, provided advice to Beth Smith, a Michigan resident until 2011, and even came to Michigan to conduct depositions for the underlying litigation," Babbitt carried on a continuous and systematic part of its general business within Michigan.

We hold that the trial court's finding that Babbitt consented to general personal jurisdiction in Michigan through the Michigan choice-of-law provision was erroneous. By entering into the fee-sharing agreement with Goodman regarding the litigation against Auto-Owners, Babbitt apparently consented to the application of Michigan law in the event that a dispute arose between it and Goodman under that agreement. However, the contract did not contain a Michigan forum selection clause; accordingly, Babbitt did not explicitly agree or consent to the adjudication in a Michigan court of any dispute arising under the contract. See *Lease Acceptance Corp v Adams*, 272 Mich App at 219.

The trial court's finding that Babbitt carried on a continuous and systematic part of its general business within Michigan was also erroneous. As far as the record in this case shows, Babbitt's contacts with Michigan arose exclusively from a single lawsuit: the litigation against Auto-Owners. Babbitt is incorporated in Florida, and there was no evidence presented to suggest that it has offices or employees based in Michigan. Further, Babbitt does not regularly solicit clients in Michigan; its involvement in this case began when Goodman approached it and asked it to participate in the litigation against Auto-Owners in Florida. Babbitt employees traveled to Michigan at least once, to participate in taking two depositions; there was no other evidence presented suggesting that Babbitt ever had any other physical presence in Michigan. There is no indication that Babbitt has, or had in the past, any regular contacts with Michigan that would render it "at home" in this state. Because Babbitt's contacts with Michigan were minor and temporary, it did not carry on a "continuous and systematic part of its general business in Michigan." *Glenn*, 305 Mich App at 707-708. Accordingly, Babbitt was not subject to general personal jurisdiction in Michigan.

## III. SPECIFIC PERSONAL JURISDICTION

Babbitt next argues that the trial court erred when it concluded that Babbitt was subject to specific personal jurisdiction in Michigan. Specifically, Babbitt contends that Michigan's long-arm statute, MCL 600.715, does not apply because it did not transact any business within Michigan or contract to provide services in Michigan. Further, Babbitt contends that subjecting it to specific personal jurisdiction in Michigan would violate due process. Babbitt argues that it did not purposely avail itself of the protections of Michigan law, the cause of action did not arise

from Babbitt's activities in Michigan, and adjudication in Michigan courts would offend notions of fair play and substantial justice. We disagree.

The doctrine of specific (limited) personal jurisdiction for corporations in Michigan is governed by the relevant long-arm statute, MCL 600.715, which states:

> The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:
>
> (1) The transaction of any business within the state.
>
> (2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.
>
> (3) The ownership, use, or possession of any real or tangible personal property situated within the state.
>
> (4) Contracting to insure any person, property, or risk located within this state at the time of contracting.
>
> (5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

Whether specific personal jurisdiction exists is a two-step analysis. *Glenn*, 305 Mich App at 712. This Court has summarized that two-step analysis as follows:

> First, this Court ascertains whether jurisdiction is authorized by Michigan's long-arm statute. Second, this Court determines if the exercise of jurisdiction is consistent with the requirements of the Due Process Clause of the Fourteenth Amendment. Both of prongs of this analysis must be satisfied for a Michigan court to properly exercise limited personal jurisdiction over a nonresident. Long-arm statutes establish the nature, character, and types of contacts that must exist for purposes of exercising personal jurisdiction. Due process, on the other hand, restricts permissible long-arm jurisdiction by defining the quality of contacts necessary to justify personal jurisdiction under the constitution. [*Yoost v Caspari*, 295 Mich App 209, 222-223; 813 NW2d 783 (2012) (citations and quotations omitted).]

The trial court ruled that Babbitt was subject to specific personal jurisdiction in Michigan under MCL 600.715(1). Regarding MCL 600.715(1), this Court has stated that "[o]ur Legislature's use of the word 'any' to define the amount of business that must be transacted establishes that even the slightest transaction is sufficient to bring a corporation within Michigan's long-arm jurisdiction." *Oberlies*, 246 Mich App at 430. Further, this Court stated that "[t]he standard for deciding whether a party has transacted any business under

-8-

[MCL 600.715(1)] is extraordinarily easy to meet" and "[t]he only real limitation placed on this [long arm] statute is the due process clause." *Id*. (quotations omitted).

The trial court's conclusion that Babbitt was subject to specific personal jurisdiction under MCL 600.715(1) was correct. Babbitt entered into the fee-sharing agreement with Goodman, including a Michigan choice-of-law provision. Although the underlying litigation proceeded in Florida, Goodman is a Michigan corporation, and Babbitt communicated with Goodman in Michigan on a consistent basis throughout the litigation, as it was required to do under the terms of the fee-sharing agreement. Further, Babbitt's assent to the fee-sharing agreement meant that it agreed to a continuing contractual relationship with Goodman, a Michigan firm, with a Michigan choice-of-law provision, to litigate against a Michigan company (Auto-Owners). The relationship lasted from 2008 until 2013. Babbitt's employees also traveled to Michigan to participate in taking two depositions during the litigation. Taken individually, each of these facts constitute relatively minor contacts between Babbitt and Michigan; however, taken together, and bearing in mind that establishment of jurisdiction under the long-arm statute is "extraordinarily easy," we hold that the contacts were sufficient to constitute the transaction of business by Babbitt within Michigan. See *Oberlies*, 246 Mich App at 430.[5]

## IV. DUE PROCESS

In determining whether exercise of specific personal jurisdiction comports with due process, this Court employs a three-part test:

> First, the defendant must have purposefully availed itself of the privilege of conducting activities in Michigan, thus invoking the benefits and protections of this state's laws. Second, the cause of action must arise from the defendant's activities in the state. Third, the defendant's activities must be substantially connected with Michigan to make the exercise of jurisdiction over the defendant reasonable. [*Yoost*, 295 Mich App at 223 (quotations omitted); see also *Glenn*, 305 Mich App at 712-713.]

In considering whether the exercise of specific personal jurisdiction comports with due process, "the primary focus . . . should be on reasonableness and fairness." *Oberlies*, 246 Mich App at 433 (quotations omitted). Further, "[w]hether the relationship between the defendant, the forum,

---

[5] Although the trial court only based its ruling regarding the long-arm statute on MCL 600.715(1), Babbitt and Goodman also dispute whether MCL 600.715(5) applies. Under MCL 600.715(5), a defendant is subject to specific personal jurisdiction if it enters into a contract for services to be performed or for materials to be furnished in the state by the defendant. Given that we find sufficient contacts to afford specific personal jurisdiction under MCL 600.715(1), and that the trial court made no findings under MCL 600.715(5), we need not decide the issue. See *Fast Air, Inc v Knight*, 235 Mich App 541, 549-550; 586 NW2d 573 (1998).

and the litigation allows personal jurisdiction over a defendant must be analyzed by the courts case by case." *Id*. at 433-434.

In determining whether a defendant has purposefully availed itself of the privilege of conducting activities in Michigan, "contacts . . . that are merely random, fortuitous, or attenuated may not be the basis for haling a defendant into a foreign jurisdiction." *Id*. at 434 (quotations omitted). A defendant has purposefully availed itself of the privilege of conducting activities in Michigan if it "deliberately has engaged in significant activities within [Michigan], or has created continuing obligations between himself and residents of the forum." *Starbrite Distributing, Inc v Excelda Mfg Co*, 454 Mich 302, 310; 562 NW2d 640 (1997), quoting *Burger King Corp v Rudzewicz*, 471 US 462, 475-476; 105 S Ct 2174; 85 L Ed 2d 528 (1985). Regarding interstate contractual obligations, "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King*, 471 US at 473. While a choice-of-law provision, standing alone, is insufficient to confer jurisdiction, it can be considered along with other facts and circumstances as part of the due process analysis. *Id*. at 481-482.

Babbitt purposefully availed itself of the privileges of conducting activities in Michigan. At the outset of the litigation against Auto-Owners, Babbitt contracted with a Michigan law firm (Goodman) to serve as a co-counsel against a Michigan company (Auto-Owners), and agreed to a Michigan choice-of-law provision. This agreement created a continuing obligation between Babbitt and Goodman that lasted from 2008 until 2013, as the litigation against Auto-Owners progressed. When a dispute ultimately arose between Babbitt and Goodman regarding the fee-sharing agreement, Michigan law would been applied under the terms of the contract, regardless of the forum court used to adjudicate that dispute. Although a choice-of-law provision alone is not enough to conclude that Babbitt purposefully availed itself of the protections of Michigan law, it is suggestive of that conclusion. See *Burger King*, 471 US at 481-482. Further, the contract between Babbitt and Goodman required Babbitt to serve as Goodman's co-counsel, "as if the attorneys involved were partners and members of the same firm." Although the litigation commenced in Florida courts, Babbitt was required to communicate with Goodman in Michigan through various channels as co-counsel. Ultimately, Babbitt's contacts with Michigan were more than random; based on its fee-sharing agreement with Goodman, Babbitt should have expected that any dispute between it and Goodman would ultimately be decided in Michigan court. Accordingly, Babbitt purposefully availed itself of the protections of Michigan law.

Regarding the second step of the due process analysis, the cause of action arose from Babbitt's activities within Michigan. This dispute arose from the fee-sharing agreement between Babbitt and Goodman; Babbitt and Goodman disagree regarding the amount of fees that each firm is entitled to receive. As noted, the fee-sharing agreement was executed between a Florida firm (Babbitt) and a Michigan firm (Goodman), with a Michigan choice-of-law provision. Although the litigation occurred in Florida, the actual dispute between the parties that gave rise to this cause of action was the fee-sharing agreement itself, and that agreement was formed under Michigan law. The cause of action thus arose out Babbitt's activities in contracting with a Michigan entity under Michigan law to share fees relating to litigation against a Michigan defendant. Accordingly, the second factor of the three-part due process analysis is satisfied.

Regarding the third step of the three-part due process analysis, it must be determined whether the assertion of personal jurisdiction would comport with fair play and substantial justice. *Aaronson v Lindsay & Hauer Intern Ltd*, 235 Mich App 259, 267; 597 NW2d 227 (1999). Relevant considerations include:

> the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantial social policies. [*Id*. (quotations omitted).]

Relevant considerations of fairness demonstrate that Michigan is a reasonable forum for the adjudication of the dispute between Babbitt and Goodman. Although Babbitt does not maintain any physical presence in Michigan, it did agree to a Michigan choice-of-law provision as part of a contract with Goodman, a Michigan law firm. Michigan's interest in adjudicating the dispute is strong, because the dispute requires an application of Michigan law and involves a Michigan corporation. Further, Michigan courts are generally in the best position to apply Michigan law; accordingly, adjudication of this dispute in Michigan would serve the interstate judicial system's interest in obtaining efficient resolution of the case. Babbitt would experience some burden in litigating the dispute in Michigan, but that burden is relatively light considering Babbitt's ongoing relationship with Goodman, and occasional travel to Michigan, between 2008 and 2013. Accordingly, subjecting Babbitt to specific personal jurisdiction in Michigan comports with notions of fair play and substantial justice, and therefore is permissible under the due process clause.

Affirmed.

/s/ Jane M. Beckering
/s/ Mark T. Boonstra