ELECTROLINES, INC v PRUDENTIAL ASSURANCE COMPANY, LTD

Docket No. 240983. Submitted November 18, 2003, at Detroit. Decided
   December 23, 2003, at 9:00 A.M. Leave to appeal denied, 470 Mich
   ___.

   Electrolines, Inc., brought an action in the Wayne Circuit Court
      against Prudential Assurance Company, Ltd., and others, seeking
      recognition and enforcement of a money judgment obtained in
      Liberia. The plaintiff, a business incorporated under Liberian law,
      had insured its store and factory in Liberia through a property cas-
      ualty insurance policy written by the defendant insurers. The plain-
      tiff brought a breach of contract action in Liberia after the parties
      failed to settle a claim for loss caused by a fire, and the Liberian
      court entered a default judgment in favor of the plaintiff. Defendant
      Assicurazioni Generali S.p.A. is incorporated in Italy and has its
      principal place of business there. The remaining defendants are
      incorporated in the United Kingdom and have their principal places
      of business there. The defendants in the circuit court action filed
      an affirmative defense alleging that the court lacked jurisdiction
      over the defendants. The defendants filed a motion for summary
      disposition, alleging that they had insufficient contacts with Michi-
      gan to support the exercise of personal jurisdiction over them. The
      defendants also sought summary disposition on the basis of forum
      non conveniens. The court, Cynthia D. Stephens, J., denied the
      motion, finding that the case concerned in rem jurisdiction and that
      Generali voluntarily subjected itself to the jurisdiction of the court
      by registering with the Michigan Insurance Commissioner. The
      court eventually held that all the defendants had waived the juris-
      dictional defense. The defendants appealed by leave granted. The
      plaintiff cross-appealed, seeking a ruling to the effect that demon-
      strating the jurisdiction of the recognizing court is not a prerequi-
      site to proceeding under the Uniform Foreign Money-Judgments
      Recognition Act (UFMJRA), MCL 691.1151 et seq.

      The Court of Appeals held:

      1. Where, as in this matter, the plaintiff failed to identify any
      property owned by the defendants in Michigan, the trial court erred
      in holding that it was unnecessary for the plaintiff to demonstrate
      that the Michigan court had personal jurisdiction over the defen-

dants in this common-law enforcement action. Generally, if a foreign country money judgment meets the conditions of the UFMJRA, the judgment is conclusive and entitled to recognition as a matter of international comity. However, the UFMJRA is not an enforcement act, it merely provides a court with a means to recognize a foreign money judgment and does not establish the procedure to file or enforce a foreign judgment. The UFMJRA provides that once a foreign judgment is recognized, it is to be enforced pursuant to the procedure established in the Uniform Enforcement of Foreign Judgments Act (UEFJA), MCL 691.1171 *et seq.* In addition to establishing the statutory procedure for obtaining enforcement of a foreign judgment, the UEFJA also expressly maintained and codified the common-law practice of bringing a new action to enforce a judgment.

2. The plaintiff's complaint in this matter requires application of the UEFJA because the plaintiff not only sought recognition of its Liberian judgment under the UFMJRA, but also sought "entry of Michigan judgment thereon," which places the plaintiff's complaint within the ambit of the UEFJA. By filing a complaint rather than merely filing the Liberian judgment along with an affidavit, the plaintiff sought to enforce the Liberian judgment not under the procedural provisions of the UEFJA, but under the common-law mechanism preserved by the UEFJA. Therefore, under the common-law mechanism, the plaintiff was required to demonstrate the enforcing court's jurisdiction over the judgment debtors or their property.

3. An action to enforce a judgment may usually be brought wherever property of the defendant is found, without any necessary connection between the underlying action and the property, or between the defendant and the forum.

4. The trial court in an action brought to enforce a judgment must possess jurisdiction over the judgment debtor or the judgment debtor's property. Here, the plaintiff failed to identify any property in Michigan owned by the defendants. Unless the defendants waived the defense of lack of personal jurisdiction, the plaintiff must demonstrate that the trial court could obtain personal jurisdiction over the defendants. The trial court erred in holding otherwise.

5. The trial court erred in holding that under the facts of this case the defendants waived the defense of lack of personal jurisdiction.

6. None of the relationships between a corporation and Michigan that constitute a sufficient basis of jurisdiction to enable a court of this state to exercise general personal jurisdiction over a corporation was present in this matter. The plaintiff failed to establish a

connection between Generali and Michigan to establish personal jurisdiction under the long-arm statute, MCL 600.715. The plaintiff's cause of action does not arise from Generali's activities in the state; therefore, the exercise of personal jurisdiction over Generali would be inconsistent with due process. The court erred in finding that Generali was subject to its personal jurisdiction. The court properly found it did not have jurisdiction over defendant Prudential.

Order denying summary disposition for defendants vacated and case remanded.

JUDGMENTS — FOREIGN JUDGMENTS — RECOGNITION — ENFORCEMENT.

Once a foreign judgment is recognized in Michigan pursuant to the Uniform Foreign Money-Judgments Recognition Act it is to be enforced pursuant to the procedure established in the Uniform Enforcement of Foreign Judgments Act, which, in addition to establishing the statutory procedure for obtaining enforcement of a foreign judgment, expressly maintained and codified the common-law practice of bringing a new action to enforce a judgment (MCL 691.1151 *et seq.*, 691.1171 *et seq.*).

*Plunkett & Cooney, P.C.* (by *Camille T. Horne* and *Hans H.J. Pijls*), for the plaintiff.

*Vandeveer Garzia, P.C.* (by *Hal O. Carroll, William L. Kiriazis,* and *Anthony J. Kostello*), and *Pino & Associates, LLP* (by *Rudolph V. Pino, Jr.*), for the defendants.

Before: BANDSTRA, P.J., and HOEKSTRA and BORRELLO, JJ.

HOEKSTRA, J. This appeal concerns an attempt by plaintiff Electrolines, Inc., to have a Michigan trial court recognize and enforce under the Uniform Foreign Money-Judgments Recognition Act (UFMJRA), MCL 691.1151 *et seq.*, and the Uniform Enforcement of Foreign Judgments Act (UEFJA), MCL 691.1171 *et seq.*, the money judgment it obtained in Liberia against defendant insurers. The trial court denied the jurisdictional challenge brought by defendants Prudential Assurance Company, Eagle Star Insurance

Company, Star Assurance Society, Ltd., Albion Insurance Company, NRG Fenchurch, Bishopsgate Insurance Company, Ltd., and, Assicurazioni Generali S.p.A. (hereinafter defendants) pursuant to MCR 2.116(C)(1), and defendants appeal by leave granted. Plaintiff cross-appeals from the same order, seeking a more favorable jurisdictional ruling than the trial court issued.

We reverse the trial court's determination that it was unnecessary for plaintiff to demonstrate that the Michigan court had personal jurisdiction over defendants. We also reverse the trial court's decision that defendants waived the defense of lack of personal jurisdiction. We affirm the trial court's holding that it did not have a jurisdictional basis over Prudential, reverse the trial court's holding that Generali was subject to its personal jurisdiction, and otherwise find that plaintiff failed to make a prima facie showing of jurisdiction sufficient to defeat defendants' motion for summary disposition. Accordingly, we vacate the trial court's order denying defendants' motion for summary disposition and remand for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is a business incorporated under Liberian law. Defendants are insurance companies that wrote a single property casualty insurance policy for plaintiff. Generali is incorporated in Italy and has its principal place of business in Italy, while the remaining defendants are incorporated in the United Kingdom and have their principal places of business in the United Kingdom.

In June 1989, fire damaged plaintiff's store and factory in Monrovia, Liberia. Plaintiff filed a claim with defendants for $1.5 million for the building and its contents. Plaintiff alleges that the parties' negotiations were unsuccessful and that the claim remains unpaid.

At some point in 1995, plaintiff filed a breach of contract action in the Sixth Judicial Circuit Court of Montserrado County in the Republic of Liberia. Defendants claim that they were not served with the suit. On February 26, 1996, the Liberian court entered a default judgment in favor of plaintiff for $1,389,766.60.

According to defendants, plaintiff desires to have the Liberian judgment "recognized and enforced" in a court in the United States so that it can take the new judgment to England where defendants have assets. Defendants assert that English courts will not recognize or enforce a judgment from a country such as Liberia that does not offer similar treatment of judgments rendered in England. As will be explained more fully later in this opinion, Michigan's adoption of the relevant uniform act does not include a reciprocity provision.

In May 1999, plaintiff filed its first "Complaint for Recognition of Foreign Country Money Judgment and for Entry of Michigan Judgment Thereon [and] Jury Demand" in Wayne Circuit Court. Plaintiff asserted in its complaint that its principal place of business was in Dearborn, Michigan. The final paragraph of the complaint and the prayer for relief provide the following:

16. Pursuant to MCL 691.1151 *et seq.*, and/or Principles of International Law, including the Principles of Comity and/or

International Treaty, said Judgment is recognizable and enforceable by this Court as though rendered by a Tribunal located in the State of Michigan.

WHEREFORE, Plaintiff respectively requests this Honorable Court to recognize the Judgment entered by the Sixth Judicial Circuit of Montserrado County, Republic of Liberia, and to enter Judgment in favor of Plaintiff, and against Defendants, jointly and severally, in the amount of $1,389,766.60, plus any further interest, costs and attorney fees to which Plaintiff may be entitled.

Defendants answered the complaint, alleging as an affirmative defense that "[t]he court does not have jurisdiction over these answering defendants." Further, on the basis of plaintiff's claim that its principal place of business was in Michigan, defendants had the case removed to federal court because of the alleged diversity of citizenship. Plaintiff admitted in federal court that it had no Michigan office, and the case was transferred back to the state court. For reasons that are not clear, the parties stipulated to dismiss the 1999 case without prejudice.

In June 2001, plaintiff filed the identical "Complaint for Recognition of Foreign Country Money Judgment and for Entry of Michigan Judgment Thereon [and] Jury Demand" in Wayne Circuit Court. Seven of the nine defendants named filed an identical answer, again alleging as an affirmative defense that "[t]he court does not have jurisdiction over these answering defendants." The two remaining defendants were never served.

The trial court held a status conference in September 2001. Defendants filed their witness list in November 2001. In December 2001, plaintiff filed a motion to compel production of certain claims and underwriting files, which the trial court denied. In December 2001,

the trial court also entered the parties' stipulated order regarding the production of documents. In January 2002, defendants filed a response to plaintiff's interrogatories and requests for admission.

From late December 2001 through late January 2002, defendants obtained affidavits from the seven overseas companies to contest jurisdiction. In February 2002, approximately eight months after the instant suit was filed, defendants moved for summary disposition pursuant to MCR 2.116(C)(1), asserting that they did not have sufficient Michigan contacts for the trial court to exercise personal jurisdiction over them. Defendants also requested the trial court decline jurisdiction on the basis of forum non conveniens.

In response, plaintiff proffered three alternative arguments: (1) that the personal jurisdiction requirement was inapplicable to a UFMJRA proceeding; (2) that defendants waived the jurisdictional defense by waiting to file their motion and participating in discovery; and (3) that jurisdiction existed inasmuch as defendant Prudential had significant contacts with Michigan, Generali is licensed by Michigan to conduct business here, and the remaining defendants chose to "follow the fortunes" of the insurance companies by agreeing to be jointly included on the insurance policy.

At a hearing on defendants' motion for summary disposition, the trial court denied the motion from the bench. The trial court accepted plaintiff's argument on the inapplicability of the concept of personal jurisdiction, finding that plaintiff's complaint instead concerned in rem jurisdiction. Nonetheless, the trial court addressed plaintiff's argument that personal jurisdiction over defendants was present. The trial court found that only Generali voluntarily subjected

itself to the jurisdiction of the trial court by registering with the Michigan Insurance Commissioner.

However, the trial court accepted plaintiff's argument that all defendants had waived the jurisdictional defense. The trial court emphasized that after having asserted the defense, defendants participated in multiple hearings without further reserving their jurisdictional defense. The trial court opined that defendants' participation was so intense and of such a long duration as to give a reasonable person a basis to believe that there had been a waiver of the defense. The trial court's bench ruling was effectuated by an order entered on April 9, 2002. Defendants moved for rehearing, which the trial court denied.

Defendants applied for leave to appeal to this Court, which this Court granted. Plaintiff filed a cross-appeal from the same order, seeking a ruling from this Court that demonstrating the jurisdiction of the recognizing court is not a prerequisite to proceeding under the UFMJRA. This Court granted defendants' motion for a stay pending appeal.

## II. JURISDICTIONAL REQUIREMENTS IN PROCEEDINGS UNDER THE UFMJRA AND THE UEFJA

The first issue we address is whether the trial court erred in holding that it was unnecessary for plaintiff to demonstrate that the Michigan court had personal jurisdiction over defendants where plaintiff sought to have the Michigan court recognize and enforce a foreign country money judgment under the UFMJRA and the UEFJA.[1]

---

[1] This threshold jurisdictional question is preserved for appellate review by the summary disposition proceedings below. Nonetheless, plaintiff argues that this Court's order granting leave to appeal "limited to the

This Court reviews a trial court's grant or denial of summary disposition de novo. *Maiden v Rozwood,* 461 Mich 109, 120; 597 NW2d 817 (1999); *Oberlies v Searchmont Resort, Inc,* 246 Mich App 424, 426; 633 NW2d 408 (2001). Likewise, this Court reviews de novo a trial court's jurisdictional rulings, *Vargas v Hong Jin Crown Corp,* 247 Mich App 278, 282; 636 NW2d 291 (2001), and statutory interpretation, *Lapeer Co Clerk v Lapeer Circuit Judges,* 465 Mich 559, 566; 640 NW2d 567 (2002).

We hold that where plaintiff failed to identify any property owned by defendants in Michigan, the trial court erred in holding that it was unnecessary for plaintiff to demonstrate that the Michigan court had personal jurisdiction over defendants in this common-law enforcement action.

A. THE UNIFORM FOREIGN MONEY-JUDGMENTS RECOGNITION ACT

Unlike the judgments of sister states, foreign country judgments are not subject to the command of the Full Faith and Credit Clause of the United States Constitution, art IV, § 1. In 1962, the National Conference of Commissioners on Uniform State Laws and the American Bar Association adopted the Uniform Foreign Money-Judgments Recognition Act (UFMJRA), thereby codifying long-held state rules that had been

issues raised in the application" excluded the in rem jurisdiction issue because defendants did not present the issue in their application but in their reply brief to plaintiff's answer to defendants' application for leave to appeal. We are not persuaded that this Court's order granting leave excluded the in rem jurisdiction issue where this Court granted defendants' motion for leave to file a reply to plaintiff's answer on the topic. In any event, this Court may consider a question of law where all the facts necessary to resolve the issue are presented. See *Poch v Anderson,* 229 Mich App 40, 52; 580 NW2d 456 (1998).

applied by the majority of courts in the United States. 1 Restatement Foreign Relations Law of the United States, 3d, part IV, ch 8, Introductory Note (1986).

"The basic mechanism of the Act provides that foreign country money judgments will be recognized by the forum state, assuming that the judgment meets a fair number of basic criteria." Anno: *Construction and Application of Uniform Foreign Money-Judgments Recognition Act*, 88 ALR 5th 545, § 2, p 561 (2001). "These requirements balance each state's desire to enforce only those judgments that accord with its own specific laws, with the understanding that the world contains many different cultures and legal systems, whose judicial decisions and legislative enactments may be completely unlike American court determinations and state statutes and regulations, but that court rulings emanating therefrom may nonetheless be worthy of recognition." *Id.*

The original prefatory note to the uniform draft includes the following reasons for proposing this legislation:

> In most states of the Union, the law on recognition of judgments from foreign countries is not codified. In a large number of civil law countries, grant of conclusive effect to money-judgments from foreign courts is made dependent upon reciprocity. Judgments rendered in the United States have in many instances been refused recognition abroad either because the foreign court was not satisfied that local judgments would be recognized in the American jurisdiction involved or because no certification of existence of reciprocity could be obtained from the foreign government in countries where existence of reciprocity must be certified to the courts by the government. Codification by a state of its rules on the recognition of money-judgments rendered in a foreign court will make it more likely that judgments rendered in the state will be recognized abroad. [Prefatory

Note, Uniform Foreign Money-Judgments Recognition Act,
13 ULA part II, p 40 (2002).]

The majority of states, including Michigan, have now adopted versions of the UFMJRA. *Pure Fishing, Inc v Silver Star Co, Ltd*, 202 F Supp 2d 905, 912 (ND Iowa, 2002), citing Silberman, *Enforcement & Recognition of Foreign County Judgments in the United States*, 648 Prac L Inst 255, 258 n 2 (2001). Michigan's version of the UFMJRA, MCL 691.1151 to 691.1159, was effective November 2, 1967. Michigan adopted the UFMJRA without a reciprocity provision, unlike several states (Florida, Idaho, Maine, North Carolina, Ohio, and Texas) that included a lack of reciprocity as a ground for discretionary refusal to recognize or enforce a foreign country judgment. Silberman, *Enforcement & Recognition of Foreign County Judgments in the United States*, 688 Prac L Inst 451, 458-459 (2003).

This Court has recognized that the "base provision" of the UFMJRA is § 3, which provides that a "foreign judgment is enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit," MCL 691.1153. *Bang v Park*, 116 Mich App 34, 36-37; 321 NW2d 831 (1982). "Foreign judgment" means any judgment of a foreign state granting or denying recovery of a sum of money. MCL 691.1151(b). "Foreign state," in turn, means "any governmental unit other than the United States, or any state, district, commonwealth, territory, insular possession thereof, or the Panama canal zone, the trust territory of the Pacific islands or the Ryukyu islands." MCL 691.1151(a).

The UFMJRA provides that a foreign money judgment "need not be recognized" if any of the following are

true: (a) the defendant in the proceedings in the foreign court did not receive notice of the proceedings in sufficient time to enable him to defend; (b) the judgment was obtained by fraud; (c) the cause of action on which the judgment is based is repugnant to the public policy of the recognizing state; (d) the judgment conflicts with another final and conclusive judgment; (e) the proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court; or (f) in the case of jurisdiction based only on personal service, the foreign court was a seriously inconvenient forum for the trial of the action. MCL 691.1154(2).

The act provides that courts may recognize bases of jurisdiction other than personal jurisdiction, MCL 691.1155(2), but a foreign country money judgment "shall not be refused recognition for lack of personal jurisdiction" if (a) the defendant was served personally in the foreign state; (b) the defendant voluntarily appeared in the proceedings, other than for the purpose of protecting property seized or threatened with seizure in the proceedings or of contesting the jurisdiction of the court over him; (c) the defendant before the commencement of the proceedings had agreed to submit to the jurisdiction of the foreign court with respect to the subject matter involved; (d) the defendant was domiciled in the foreign state when the proceedings were instituted, or, being a body corporate had its principal place of business, was incorporated, or had otherwise acquired corporate status, in the foreign state; (e) the defendant had a business office in the foreign state and the proceedings in the foreign court involved a cause of action

arising out of business done by the defendant through that office in the foreign state; or (f) the defendant operated a motor vehicle or airplane in the foreign state and the proceedings involved a cause of action arising out of such operation. MCL 691.1155(1).

Generally speaking, if the foreign country money judgment meets the conditions of the UFMJRA, then the judgment is "conclusive" and entitled to recognition as a matter of international comity. Comity is the recognition of a judicial or legislative act of another nation that permits foreign judgments to be recognized in this country. *Bang, supra* at 39. While the term "recognition" is not defined in the UFMJRA, Black's Law Dictionary (6th ed) defines "recognition" as "[r]atification," "confirmation" or "an acknowledgement that something done by another person in one's name had one's authority."

B. THE UNIFORM ENFORCEMENT OF FOREIGN JUDGMENTS ACT

Key to our resolution of this appeal is the understanding that a foreign country money judgment cannot be enforced until it has been recognized and that the UFMJRA is not an enforcement act. The UFMJRA only serves the purpose of providing a court with a means to recognize a foreign money judgment. The UFMJRA does not establish the procedure to file or enforce a foreign judgment. *Pinilla v Harza Engineering Co*, 324 Ill App 3d 803, 807; 755 NE2d 23 (2001), citing 9 Am Jur 3d, Proof of Facts, *Invalidity of Judgment of Court of Foreign Country*, § 4, p 703 (1990). Rather, the act provides that once a foreign judgment is recognized, it is to be enforced in the "same manner" as the judgment of a sister state. MCL 691.1153.

The "same manner" to which § 3 of the UFMJRA refers is the procedure established in another uniform act, the Uniform Enforcement of Foreign Judgments Act (UEFJA), MCL 691.1171 to 691.1179, which Michigan adopted effective June 1, 1997. The "foreign judgments" governed by the UEFJA are the "judgment[s], decree[s], or order[s] of a court of the United States or of any other court that is entitled to full faith and credit in this state," MCL 691.1172, i.e., the judgments of·sister states. However, the UFMJRA incorporated the UEFJA's enforcement mechanisms to also apply to foreign country money judgments. Silberman, *supra*, 688 Prac L Inst, p 490. See *Guinness PLC v Ward*, 955 F2d 875 (CA 4, 1992) (holding that the uniform enforcement act is applicable to a foreign country judgment once such judgment has been found to be entitled to recognition under the UFMJRA).

The comment to § 3 of the UFMJRA explains that the language of that section, which provides that a foreign judgment that meets the criteria of the act "is enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit," means that the method of enforcement would be that of the UEFJA in a state having enacted the latter act. 88 ALR 5th 545, *supra*, § 2 (2001).

Michigan's 1997 adoption of the UEFJA gave parties the option of filing a copy of a foreign judgment with a court. Section 3 of the UEFJA provides that a party may file a copy of a foreign judgment "authenticated in accordance with an act of congress or the laws of this state . . . ." MCL 691.1173. The clerk must treat the foreign judgment in the same manner as a judgment of the circuit court, the district court, or a municipal court of this state. *Id.*   A judgment filed

under the UEFJA has "the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of the circuit court, the district court, or a municipal court of this state and may be enforced or satisfied in like manner." MCL 691.1173.

Section 4 of the UEFJA provides that at the time of the filing of the foreign judgment, the judgment creditor must also file with the court clerk an affidavit setting forth the name and last known address of the judgment debtor and the judgment creditor, MCL 691.1174(1), and the applicable filing fee, MCL 691.1174(2). After the foreign judgment and the affidavit have been filed, the clerk mails notice of the filing to the judgment debtor at the address provided. MCL 691.1174(3). The foreign judgment may be enforced twenty-one days after the date notice of the filing of the foreign judgment is mailed. MCL 691.1174(4). Postjudgment interest is awarded in accordance with the law of the jurisdiction in which the judgment was awarded. MCL 691.1176.

In addition to establishing this statutory procedure for obtaining enforcement of a foreign judgment, the UEFJA also expressly maintained and codified the common-law practice of bringing a new action to enforce a judgment. Regarding the common-law practice, § 7 of the UEFJA provides that "[a] judgment creditor may bring an action to enforce his or her judgment instead of proceeding under this act." MCL 691.1177.

### C. JURISDICTIONAL REQUIREMENTS

The UFMJRA and the UEFJA operate in tandem, with recognition of a foreign money judgment under the

UFMJRA the precursor to enforcement under the UEFJA. Plaintiff, however, argues that it proceeded under the UFMJRA only and that the UEFJA is irrelevant in its pursuit to turn its Liberian money judgment against defendant insurers into a Michigan money judgment. We disagree. Plaintiff's complaint requires application of the UEFJA. The facts of this case do not require us to decide the jurisdictional requirements of a complaint brought solely under the UFMJRA.

When a party brings a motion for summary disposition, courts "look beyond the face of a plaintiff's pleadings to determine the gravamen or gist of the cause of action contained in the complaint." *Sankar v Detroit Bd of Ed*, 160 Mich App 470, 476; 409 NW2d 213 (1987).

Here, the title alone of plaintiff's complaint reveals that plaintiff sought not only recognition of the Liberian judgment, which is within the purview of the UFMJRA, but also "entry of Michigan judgment thereon," which places plaintiff's complaint within the ambit of the UEFJA. Further, plaintiff alleged in its complaint that the Liberian judgment was both "recognizable" and "enforceable" by the circuit court. In its prayer for relief, plaintiff requested the court to both "recognize" the Liberian judgment and "enter Judgment in favor of Plaintiff and against Defendants."

Similarly, in issuing its international summons, plaintiff described the purpose of its proceedings in Michigan as "to convert foreign Judgment into Michigan Judgment and to enforce Judgment." Likewise, in its answer to defendants' motion for summary disposition, plaintiff described its case as a "recognition and enforcement proceeding." Therefore, we have no

doubt that plaintiff intended to initiate both a recognition and enforcement proceeding, even if plaintiff does not subsequently utilize any collection devices in Michigan.

Moreover, by filing a complaint in this case rather than merely filing the Liberian judgment along with an affidavit, plaintiff sought to enforce the Liberian judgment not under the newly enacted procedural provisions of the UEFJA, but under the common-law mechanism preserved by the UEFJA. Defendants argue that because plaintiff chose the common-law route, i.e., initiating a new complaint rather than filing the judgment with an affidavit, plaintiff is required to demonstrate the enforcing court's jurisdiction. We agree.

We have not found any authorities indicating that the foundational requirement of demonstrating a trial court's jurisdiction over a person or property is inapplicable in enforcement proceedings. To the contrary, the pertinent Restatement provides that "enforcement of a debt arising out of a foreign judgment must be initiated by civil action, and the judgment creditor must establish a basis for the exercise of jurisdiction by the enforcing court over the judgment debtor or his property." 1 Restatement Foreign Relations Law, *supra*, part IV, ch 8, subch A, § 481, comment g (1986). See also Silberman, *supra*, 688 Prac L Inst, p 489 (opining that jurisdiction over a judgment debtor in an action brought to enforce the judgment must be acquired and that the action may be brought "against the defendant where he may be found or domiciled or the property of the judgment debtor may be attached as a basis of jurisdiction to enforce").

Although a jurisdictional basis is required in an enforcement proceeding like in any other civil action, the jurisdiction in enforcement proceedings is wider. Whereas "a state has jurisdiction to adjudicate a claim on the basis of presence of property in the forum only where the property is reasonably connected with the claim, an action to enforce a judgment may usually be brought wherever property of the defendant is found, without any necessary connection between the underlying action and the property, or between the defendant and the forum." Restatement, *supra*, part IV, ch 8, subch A, § 481, comment h. "The rationale behind wider jurisdiction in enforcement of judgments is that once a judgment has been rendered in a forum having jurisdiction, the prevailing party is entitled to have it satisfied out of the judgment debtor's assets wherever they may be located." *Id.*

The rationale for the wider jurisdiction mentioned in the Restatement was no doubt drawn from an oft-cited footnote in *Shaffer v Heitner*, 433 US 186; 97 S Ct 2569; 53 L Ed 2d 683 (1977). In discussing the enforcement of sister state judgments, the United States Supreme Court observed that "[t]he Full Faith and Credit Clause . . . makes the valid in personam judgment of one State enforceable in all other States." *Id.* at 210. The Court noted that

> [o]nce it has been determined by a court of competent jurisdiction that the defendant is a debtor of the plaintiff, there would seem to be no unfairness in allowing an action to realize on that debt in a State *where the defendant has property*, whether or not that State would have jurisdiction to determine the existence of the debt as an original matter. [*Id.* at 210 n 36 (emphasis added).]

Hence, in *Lenchyshyn v Pelko Electric, Inc*, 281 AD2d 42; 723 NYS2d 285 (2001), the New York Supreme Court, Appellate Division, referenced the footnote in *Shaffer* to support its holding that a judgment creditor does not need to show a basis for the exercise by a New York court of *personal* jurisdiction over a judgment debtor before obtaining recognition and enforcement of a foreign country money judgment. See also *Pure Fishing, supra* (finding the rationale of the New York court in *Lenchyshyn* persuasive). Cf. *SCD Chem Distributors, Inc v Medley*, 203 Mich App 374, 378; 512 NW2d 86 (1994) (decisions from other states can guide the interpretation of uniform laws).

In its effort to establish that personal jurisdiction is not a prerequisite to its recognition and enforcement action, plaintiff heavily relies on *Lenchyshyn*. However, plaintiff overlooks that the judgment debtors in *Lenchyshyn* had assets in the enforcing state, to wit, bank accounts in Buffalo, New York, and a New York corporation where one of the defendants was a principal. Although the *Lenchyshyn* court concluded that personal jurisdiction was not required, the *Lenchyshyn* court acquired jurisdiction because the defendants had property in New York. Indeed, the *Lenchyshyn* court concluded that "[a]t bottom, defendants take the illogical and inequitable position that a judgment debtor's *New York assets* should be immune from execution or restraint so long as the judgment debtor absents himself from New York . . . ." *Lenchyshyn, supra* at 50 (emphasis added). Thus, the holding of *Lenchyshyn* is helpful only where a party demonstrates that property of the judgment debtor is located within the jurisdiction of the court.

In summary, in an action brought to enforce a judgment, the trial court must possess jurisdiction over the judgment debtor or the judgment debtor's property. Because plaintiff failed to identify any property in Michigan owned by defendants, the wider jurisdiction afforded in enforcement proceedings does not help plaintiff here. Therefore, unless defendants waived the defense of lack of personal jurisdiction, plaintiff must demonstrate that the trial court could obtain personal jurisdiction over defendants. We therefore reverse the trial court's contrary holding.

### III. DEFENSE OF LACK OF PERSONAL JURISDICTION

The second issue we decide is whether the trial court erred in holding that defendants waived the defense of lack of personal jurisdiction. This Court reviews a trial court's grant or denial of summary disposition de novo. *Maiden, supra*. Likewise, this Court reviews de novo a trial court's jurisdictional rulings, *Vargas, supra*, and statutory interpretation, *Lapeer, supra*. This Court reviews for clear error a trial court's factual determinations regarding a waiver claim, MCR 2.613(C); however, the trial court's ultimate decision concerning whether those facts show a waiver is a question of law reviewed de novo. *Madison Dist Pub Schools v Myers*, 247 Mich App 583, 588; 637 NW2d 526 (2001) (waiver of right to demand arbitration). We hold that defendants did not waive the defense of lack of personal jurisdiction.

The governing court rule provides that whether a court lacks jurisdiction over the person or property is a ground that "must be raised in a party's first motion under this rule or in the party's responsive pleading, whichever is filed first, or [it is] waived." MCR

2.116(D)(1). Further, a party waives an affirmative defense unless the defense is set forth in its first responsive pleading. MCR 2.111(F). The term "pleading" includes a complaint, a counterclaim, a third-party complaint, an answer to one of the above, or a reply to an answer. MCR 2.110(A). The current court rules do not include a special-appearance requirement.

Here, defendants answered plaintiff's complaint and alleged as their first affirmative defense that "[t]he court does not have jurisdiction over these answering defendants." Although defendants did not use the word "personal" in challenging the court's jurisdiction, the affirmative defense states jurisdiction "over these answering defendants" and another affirmative defense challenges the trial court's subject-matter jurisdiction. Therefore, defendants' jurisdictional objection sufficiently placed plaintiff on notice of an attack based on a lack of personal jurisdiction. Moreover, the objection satisfied the requirements of the court rule.

Plaintiff argued and the trial court agreed that defendants subsequently waived the preserved defense by participating in discovery and waiting nearly eight months before filing a motion for summary disposition under MCR 2.116(C)(1). We disagree.

The only Michigan case plaintiff found for its implied-waiver argument was this Court's decision in *Dundee v Puerto Rico Marine Mgt, Inc*, 147 Mich App 254; 383 NW2d 176 (1985). In *Dundee, supra* at 257, the defendant waited for more than four years to assert its defense of lack of jurisdiction and did so immediately before trial. Even then, the defendant admitted that the court had jurisdiction and merely

asserted that the Michigan court was an inconvenient forum. Under those facts, this Court ruled that the defendant had waived its right to assert its jurisdictional defense. *Id.*

Here, defendants did not wait four years or until the eve of trial before moving for summary disposition. Rather, defendants waited less than eight months in the instant litigation to move for summary disposition. Moreover, their participation in the litigation was not so intense as to indicate a waiver of the defense. Before filing their motion for summary disposition in this case in February 2002, defendants participated in the case in only four ways. They participated in a status conference in September 2001, filed their witness list in November 2001, responded to plaintiff's motion to compel production of documents and stipulated the entry of an order on the matter in December 2001, and filed a response to plaintiff's interrogatories and requests for admission in January 2002. In February 2002, when defendants filed their motion for summary disposition, plaintiff still could have reasonably expected that it would have to contest a jurisdictional defense.

Therefore, the trial court erred in deciding that these facts showed a waiver of the properly preserved defense, and we reverse the trial court's holding that defendants waived the defense of lack of personal jurisdiction. Consequently, we turn to analyzing whether any bases for personal jurisdiction over defendants exist.

IV. BASES FOR PERSONAL JURISDICTION OVER DEFENDANTS

The trial court applied the personal jurisdictional requirements to Generali and Prudential only, finding

that Generali was subject to the jurisdiction of the circuit court. This Court reviews de novo a trial court's jurisdictional rulings. *Vargas, supra.* We hold that plaintiff's showing was insufficient with regard to all defendants.

### A. GENERAL PERSONAL JURISDICTION

As explained more fully before, plaintiff bore the burden of demonstrating that the trial court possessed personal jurisdiction over defendants, although only a prima facie showing of jurisdiction was needed to defeat defendants' motion for summary disposition. See *Oberlies, supra* at 426. Jurisdiction over the person may be established by way of general personal jurisdiction or specific (limited) personal jurisdiction. *Id.* at 427.

The exercise of general jurisdiction is possible when a defendant's contacts with the forum state are of such nature and quality as to enable a court to adjudicate an action against the defendant, even when the claim at issue does not arise out of the contacts with the forum state. *Oberlies, supra.* When a defendant's contacts with the forum state are insufficient to confer general jurisdiction, jurisdiction may be based on the defendant's specific acts or contacts with the forum state. *Id.*

The existence of any of the following three relationships between a corporation and Michigan constitutes a sufficient basis of jurisdiction to enable a court of this state to exercise general personal jurisdiction over a corporation and render personal judgments against the corporation: (1) incorporation under the laws of this state, (2) consent, or (3) the carrying on of a continuous and systematic part of its

general business within the state. MCL 600.711. None of these relationships is present here.

This Court employs a two-step analysis when examining whether a court in Michigan may exercise limited personal jurisdiction over a defendant. *Aaronson v Lindsay & Hauer Int'l Ltd*, 235 Mich App 259, 262; 597 NW2d 227 (1999). First, this Court ascertains whether jurisdiction is authorized by Michigan's long-arm statute. *Id.* Second, this Court determines if the exercise of jurisdiction is consistent with the requirements of the Due Process Clause of the Fourteenth Amendment. *Id.*

The due process analysis concerns three questions: first, has the defendant purposefully availed itself of the privilege of conducting activities in Michigan, thus invoking the benefits and protections of this state's laws; second, does the cause of action arise from the defendant's activities in the state; and third, are the defendant's activities so substantially connected with Michigan that they make the exercise of jurisdiction over the defendant reasonable. *Aaronson, supra* at 265.

MCL 600.715, Michigan's long-arm statute pertinent to specific personal jurisdiction over a corporation, provides that the existence of any of the following five relationships between a corporation or its agent and Michigan constitutes a sufficient basis of jurisdiction to enable a court of this state to exercise limited personal jurisdiction over the corporation and "to enable such courts to render personal judgments against such corporation arising out of the act or acts

which create any of the following relationships:" (1) the transaction of any business within the state; (2) the doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort; (3) the ownership, use, or possession of any real or tangible personal property situated within the state; (4) contracting to insure any person, property, or risk located within this state at the time of contracting; (5) entering into a contract for services to be performed or for materials to be furnished in the state by the defendant. MCL 600.715.

The parties did not contract to insure property in Michigan, MCL 600.715(4); therefore, only application of subsection 715 (1) ("[t]he transaction of any business within the state"), MCL 600.715(1), is at issue.

Because the phrase "transaction of any business" is not defined in the statute, it is proper to rely on dictionary definitions in determining the meaning of that provision. *Oberlies, supra* at 430. "Transact" is defined as " 'to carry on or conduct (business, negotiations, etc.) to a conclusion or settlement.' " *Id.*, quoting *Random House Webster's College Dictionary* (1997). "Business" is defined as " 'an occupation, profession, or trade . . . the purchase and sale of goods in an attempt to make a profit.' " *Id.* Our Legislature's use of the word "any" to define the amount of business that must be transacted establishes that even the slightest transaction is sufficient to bring a corporation within Michigan's long-arm jurisdiction. *Id.*

The trial court held that Generali had voluntarily subjected itself to the jurisdiction of the circuit court by registering with the Michigan Insurance Commissioner. We are not persuaded that registering with the Insurance Commissioner is equivalent to a business

transaction, as this Court defined business transaction in *Oberlies, supra*. However, even assuming arguendo that Generali's registration with the Michigan Insurance Commissioner is an act that could constitute a "transaction of any business" under MCL 600.715(1), plaintiff's suit does not arise from Generali's registration, but from a fire of an insured building in Liberia. In other words, plaintiff's cause of action, the enforcement of a Liberian judgment, did not arise from Generali's activities in Michigan to the extent that the court could render a personal judgment against the corporation "arising out of the act or acts which create any of the . . . relationships," MCL 600.715. Therefore, plaintiff has not established a connection between Generali and Michigan under the specific personal jurisdiction statute.

Additionally, because plaintiff's cause of action does not arise from Generali's activities in the state, the exercise of jurisdiction would be inconsistent with due process. See *Aaronson, supra*. Accordingly, the trial court erred in concluding that Generali was subject to its personal jurisdiction, and we reverse its holding.

A similar conclusion is compelled regarding Prudential. In this regard, the trial court opined that "all we know is that Prudential is the parent corporation of a Michigan subsidiary," Jackson National Life Insurance Company. We affirm the trial court's holding that it did not have a jurisdictional basis over Prudential.

Even assuming arguendo that the corporate separation between Prudential and its Michigan subsidiary is fictitious or that Prudential is in reality the alter ego of its subsidiary, see *Wiles v B E Wallace Products*

*Corp*, 25 Mich App 300; 181 NW2d 323 (1970), or that Prudential exercised an undue amount of control over its Michigan subsidiary, see *Avery v American Honda Motor Car Co*, 120 Mich App 222; 327 NW2d 447 (1982), plaintiff's cause of action, the enforcement of a Liberian judgment, did not arise from the activities of Prudential's Michigan subsidiary. Therefore, plaintiff has not established a connection between Prudential and Michigan under the specific personal jurisdiction statute, MCL 600.715, and the exercise of jurisdiction over Prudential would also be inconsistent with due process, see *Aaronson, supra.*

Last, we note that plaintiff requested that this Court remand for further discovery regarding defendants' contacts with Michigan. In light of the fact that plaintiff must ultimately demonstrate that its cause of action arises from defendants' activities in Michigan, we are not convinced that further discovery regarding defendants' contacts with Michigan stands a reasonable chance of uncovering factual support for plaintiff's position. See *Village of Dimondale v Grable*, 240 Mich App 553, 566-567; 618 NW2d 23 (2000). See also *Oberlies, supra* at 440 n 2 (noting that the policy favoring full and open discovery has limited application where there is a preliminary motion challenging jurisdiction because "[t]he concept of fairness is emasculated where the nonresident is haled to Michigan during the completion of discovery to find out whether the party should be haled to Michigan to defend the suit").

V. CONCLUSION

We reverse the trial court's determination that it was unnecessary for plaintiff to demonstrate that the

Michigan court had personal jurisdiction over defendants in this common-law enforcement action. We also reverse the trial court's decision that defendants waived the defense of lack of personal jurisdiction. We affirm the trial court's holding that it did not have a jurisdictional basis over Prudential, reverse the trial court's holding that Generali was subject to its personal jurisdiction, and otherwise find that plaintiff failed to make a prima facie showing of jurisdiction sufficient to defeat defendants' motion for summary disposition.

Accordingly, we vacate the trial court's order denying defendants' motion for summary disposition and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.