*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SALZEIDER, INC. and SCOTT SALZEIDER,

        Plaintiffs-Appellants,

v

EASY STREET SPARTAN 8411, LLC,

        Defendant-Appellee.

UNPUBLISHED
October 26, 2023

No. 359551
Oakland Circuit Court
LC No. 2021-189003-CB

Before: K. F. KELLY, P.J., and JANSEN and CAMERON, JJ.

PER CURIAM.

Plaintiffs appeal by right the trial court's order granting summary disposition in favor of defendant under MCR 2.116(C)(1) on the basis that the court lacked personal jurisdiction over defendant. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Plaintiff Scott Salzeider, the owner of plaintiff Salzeider, Inc., and Anthony Leeds, the owner of OM Capital Fund II, LLC ("OM Capital"), entered into a joint venture to purchase real property for $2,100,000 from defendant Easy Street Spartan 8411, LLC ("Easy Street"), located in Carol Stream, Illinois. Under the terms of the joint venture, Salzeider and Leeds were to split equally the purchase price and all costs arising from the transaction with OM Capital. Kelly Disser, the president of Easy Street, negotiated with Leeds to sell the property to OM Capital.

On June 26, 2020, OM Capital entered into a "Purchase and Sale Agreement" with Easy Street for the sale of the property. Under the terms of that agreement, OM Capital was to transfer $250,000 in a nonrefundable earnest-money payment to Easy Street. Leeds allegedly provided Salzeider with a falsified copy of the purchase agreement that instead showed that OM Capital was required to provide $800,000 in refundable earnest money. The day before the agreement between OM Capital and Easy Street was executed, Salzeider sent $400,000 to OM Capital, which Salzeider believed to be his 50% share of the earnest-money payment. Leeds purportedly sent the $250,000 earnest-money payment to Easy Street and kept the remaining $150,000. For reasons not in the record, the original purchase agreement was terminated on July 24, 2020.

-1-

On July 29, 2020, OM Capital and Easy Street executed a "Reinstatement and Amendment to Purchase and Sale Agreement" that advanced the date of the closing from the original purchase agreement and required OM Capital to pay an additional $550,000 in nonrefundable earnest money. Leeds allegedly sent Salzeider another falsified copy of the reinstatement agreement that stated that a $1,300,000 refundable earnest-money payment was due, and Salzeider sent Leeds $650,000 to cover what he believed was his half of the payment. Leeds allegedly transferred $550,000 to Easy Street and kept the remaining $100,000. In total, Salzeider alleged he transferred $1,050,000 to OM Capital, of which $800,00 was transferred to Easy Street and $250,000 was kept by Leeds. The deal between Easy Street and OM Capital never closed, and Easy Street refused to return the earnest money to plaintiffs. On November 18, 2020, Salzeider, Inc. was awarded a default judgment against Leeds and OM Capital for the conversion of its funds. In a filing in that case, Salzeider, Inc. alleged that Leeds fled to South Carolina to avoid payment on the judgment.

In this case, plaintiffs filed a five-count complaint against Easy Street for unjust enrichment, conversion, aiding and abetting conversion, restitution, and a declaratory judgment that Easy Street's retention of the earnest money was an unenforceable liquidated damages penalty. In lieu of filing an answer, Easy Street moved for summary disposition under MCR 2.116(C)(1), arguing that it did not have sufficient minimum contacts within Michigan for Michigan's long-arm statute to confer personal jurisdiction and would violate its due-process rights to have to defend against a suit in Michigan because it had never availed itself of the protections of Michigan law. The trial court agreed, concluding that no relationship between Easy Street and Michigan existed that would confer personal jurisdiction over Easy Street under Michigan's long-arm statute and that it would violate Easy Street's due-process rights to require Easy Street to defend against this case in Michigan. This appeal followed.

## II. STANDARDS OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Whether a court has personal jurisdiction over a defendant is also a question of law that is reviewed de novo. *Oberlies v Searchmont Resort, Inc*, 246 Mich App 424, 426; 633 NW2d 408 (2001). "The plaintiff bears the burden of establishing jurisdiction over the defendant, but need only make a prima facie showing of jurisdiction to defeat a motion for summary disposition." *Jeffrey v Rapid American Corp*, 448 Mich 178, 184; 529 NW2d 644 (1995) (citation omitted).

"When reviewing a trial court's decision on a motion for summary disposition brought under MCR 2.116(C)(1), the trial court and this Court consider the pleadings and documentary evidence submitted by the parties in a light most favorable to the nonmoving party." *Yoost v Caspari*, 295 Mich App 209, 221; 813 NW2d 783 (2012). "The plaintiff's complaint must be accepted as true unless specifically contradicted by affidavits or other evidence submitted by the parties." *Id*. Whether the exercise of personal jurisdiction over a defendant is consistent with due process under the Fourteenth Amendment is a question of law that is reviewed de novo. *Id*. at 219.

## III. LONG-ARM STATUTE

Plaintiffs first argue that the trial court erred when it concluded that Michigan's long-arm statute did not confer limited personal jurisdiction over Easy Street. We agree.

"Before a court may obligate a party to comply with its orders, the court must have in personam jurisdiction over the party." *Oberlies*, 246 Mich App at 427. "When a defendant's contacts with the forum state are insufficient to confer general jurisdiction, jurisdiction may be based on the defendant's specific acts or contacts with the forum state." *Electrolines, Inc v Prudential Assurance Co, Ltd*, 260 Mich App 144, 166; 677 NW2d 874 (2003). "When examining whether a Michigan court may exercise limited personal jurisdiction over a defendant, this Court employs a two-step analysis." *Yoost*, 295 Mich App at 222. First, the Court must determine whether the exercise of jurisdiction is authorized by Michigan's long-arm statute. *Glenn v TPI Petroleum, Inc*, 305 Mich App 698, 712; 854 NW2d 509 (2014). "Second, this Court determines if the exercise of jurisdiction is consistent with the requirements of the Due Process Clause of the Fourteenth Amendment." *Electrolines*, 260 Mich App at 167. "Both prongs of this analysis must be satisfied for a Michigan court to properly exercise limited personal jurisdiction over a nonresident." *Yoost*, 295 Mich App at 222.

"Long-arm statutes establish the nature, character, and types of contacts that must exist for purposes of exercising personal jurisdiction." *Yoost*, 295 Mich App at 222. Plaintiffs contend that Michigan courts may exercise limited personal jurisdiction over Easy Street under MCL 600.715, which states:

> The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:
>
> (1) The transaction of any business within the state.
>
> (2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.
>
> (3) The ownership, use, or possession of any real or tangible personal property situated within the state.
>
> (4) Contracting to insure any person, property, or risk located within this state at the time of contracting.
>
> (5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

"The primary goal of judicial interpretation of statutes is to ascertain and give effect to the Legislature's intent." *Wiesner v Washtenaw Co Community Mental Health*, 340 Mich App 572, 580; 986 NW2d 629 (2022). "[I]f the language is clear and unambiguous, the plain meaning of the statute reflects the legislative intent and judicial construction is not permitted." *Grand Rapids v Brookstone Capital, LLC*, 334 Mich App 452, 459; 965 NW2d 232 (2020). Thus, "[w]ell-settled principles of statutory interpretation require us to look to the plain language of MCL 600.715(1) to determine whether defendant falls within the state's long-arm jurisdiction." *Oberlies*, 246 Mich App at 429.

The phrase, "transaction of any business" in MCL 600.715(1) is not defined by statute. This Court, therefore, has relied on dictionary definitions of the phrase to interpret its meaning. *Id.* at 430. In *Oberlies*, we explained:

> "Transact" is defined as "to carry on or conduct (business, negotiations, etc.) to a conclusion or settlement." Random House Webster's College Dictionary (1997). "Business" is defined as "an occupation, profession, or trade . . . the purchase and sale of goods in an attempt to make a profit." *Id.* Our Legislature's use of the word "any" to define the amount of business that must be transacted establishes that even the slightest transaction is sufficient to bring a corporation within Michigan's long-arm jurisdiction. [*Id.*]

Here, plaintiff alleged that Leeds and Disser had a longstanding relationship that predated the real estate transaction in this case. In his affidavit, Salzeider averred that "Leeds learned about the Property and the opportunity to purchase it" from Disser, who "solicited Leeds [sic] interest in the Property."[1] In preparation for closing on the deal, plaintiffs and Leeds in Michigan met with Easy Street in Illinois virtually or telephonically to discuss due diligence and other matters. Salzeider also explained that the money for the earnest money deposits were transferred from OM Capital's credit union account in Michigan to Easy Street in Illinois.

Easy Street's contacts with Michigan concerning the real estate transaction were sufficient to bring Easy Street within Michigan's long-arm statute under MCL 600.751(1). Easy Street was certainly involved in a "business" activity when it negotiated the sale of property in Illinois with parties located in Michigan, all in a purported attempt to realize a profit from the transaction. Moreover, Easy Street "transacted" that business in Michigan when it solicited Leeds's interest in purchasing the property, negotiated the purchase of the property with parties physically present in Michigan, received money pursuant to that transaction from a business and bank account located in Michigan, and eventually brought the negotiations to a terminal point when the deal did not close.

In sum, plaintiffs have established a prima facie case that Easy Street transacted business in Michigan. See *Oberlies*, 246 Mich App at 430 (stating that "[t]he only real limitation placed on this long arm statute is the due process clause") (quotation marks and citation omitted; quotation cleaned up). Therefore, we agree the trial court erred when it concluded that the long-arm statute did not confer limited personal jurisdiction over Easy Street. However, the exercise of jurisdiction must still comport with due process, which we turn to next.

## IV. DUE PROCESS

Plaintiffs contend that the trial court erred when it ruled that the Due Process Clause of the Fourteenth Amendment prohibits a Michigan court from exercising personal jurisdiction over Easy Street. We disagree.

---

[1] Although Easy Street denies that it was the party that initiated first contact concerning the purchase of the property, for purposes of this appeal, we must view all facts in the light most favorable to plaintiff. See *Yoost*, 295 Mich App at 221.

Once it has been established that personal jurisdiction over a defendant may be exercised under a long-arm statute, the trial court must next determine whether the exercise of personal jurisdiction over the defendant is proper under the principles of due process. *Electrolines*, 260 Mich App at 167. "The Due Process Clause requires that the exercise of personal jurisdiction comport with 'traditional notions of fair play and substantial justice.' " *Oberlies*, 246 Mich App at 432-433, quoting *Int'l Shoe Co v Wash Office of Unemployment Compensation & Placement*, 326 US 310, 316; 66 S Ct 154; 90 L Ed 95 (1945). "The constitutional touchstone of a due process analysis with respect to personal jurisdiction is whether the defendant purposely established the minimum contacts with the forum state necessary to make the exercise of jurisdiction over the defendant fair and reasonable." *Oberlies*, 246 Mich App at 433 (quotation marks omitted). In *Mozdy v Lopez*, 197 Mich App 356, 359; 494 NW2d 866 (1992), this Court laid out a three-part test for determining whether a defendant has established minimum contacts sufficient to comply with due process:

> First, the defendant must have purposefully availed itself of the privilege of conducting activities in Michigan, thus invoking the benefits and protections of this state's laws. Second, the cause of action must arise from the defendant's activities in the state. Third, the defendant's activities must be so substantially connected with Michigan to make the exercise of jurisdiction over the defendant reasonable.

"Whether jurisdiction is proper under the minimum contacts test does not depend on the weight of the factors individually. Rather, the primary focus when analyzing personal jurisdiction should be on 'reasonableness' and 'fairness.' " *Oberlies*, 246 Mich App at 433, quoting *Jeffrey*, 448 Mich at 186. Thus, we reject "any talismanic jurisdictional formulas; the facts of each case must always be weighed in determining whether personal jurisdiction would comport with fair play and substantial justice." See *Burger King Corp v Rudzewicz*, 471 US 462, 485-486; 105 S Ct 2174; 85 L Ed 2d 528 (1985) (quotation marks and citation omitted; quotation cleaned up).

## A. PURPOSEFUL AVAILMENT

The " 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts or of the unilateral activity of another party or a third person[.]" *Rudzewicz*, 471 US at 475 (citations omitted). To have purposely availed itself of Michigan law, the defendant must "deliberately engage in significant activities within a state, or create continuing obligations between himself and residents of the forum to the extent that it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Vargas v Hong Jin Crown Corp*, 247 Mich App 278, 285; 636 NW2d 291 (2001) (quotation marks omitted). There must be a degree of foreseeability to a defendant that his "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp v Woodson*, 444 US 286, 297; 100 S Ct 559; 62 L Ed 2d 490 (1980). The Due Process Clause also "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Id*. However, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum." *Rudzewicz*, 471 US at 474.

As noted above, there is a question of material fact regarding whether Disser was first to reach out to Leeds regarding the availability of the property. The evidence submitted to the trial court supports a reasonable inference that Disser initiated contact with Leeds. In his affidavit, Salzeider averred that Leeds

learned about the property from Disser. Disser, on the other hand, stated in his affidavit that he did not initiate contact with any Michigan entity regarding the sale of land. However, the documentary evidence does not necessarily support the facts in Disser's affidavit. In an April 2, 2020 e-mail from Disser to Leeds with the subject line "two-bts sites," Disser wrote: "Here are the sites we have deals going on . . . ." From this e-mail and Salzeider's affidavit, it is reasonable to infer that Disser was the first to contact Leeds about the sale of real estate. Even if Leeds made first contact about prospective properties, the documentary evidence shows that Disser offered Leeds a specific property that Leeds had not known about, and the correspondence listed Leeds as representing a Michigan-based company. Therefore, on the basis of these facts, it would not be unreasonable for Easy Street to expect to be haled into court in Michigan. See *Jeffrey*, 448 Mich at 187 (stating the mere fact that a defendant was not physically present in Michigan would not defeat the exercise of personal jurisdiction where the defendant "reaches beyond its own state and purposefully avails itself of the privilege of exploiting forum-based business opportunities").

However, in order for the exercise of personal jurisdiction to comport with due process even where a defendant purposefully avails itself of the forum jurisdiction, the connection between the plaintiff's cause of action and the defendant's contacts with the state must not be "so attenuated that it is unreasonable to exercise jurisdiction over [the] defendant in this case." *Oberlies*, 246 Mich App at 435. Thus, "for limited personal jurisdiction to attach, the cause of action must arise from the circumstances creating the jurisdictional relationship between the defendant and the foreign state." *Id*. (quotation cleaned up). In other words, the defendant's activities in Michigan must, "in a natural and continuous sequence, have caused the alleged injuries forming the basis of the plaintiff's cause of action." *Id*. at 437. When the causes of action include claims based on conspiracy between in- and out-of-state defendants, "mere allegations that a conspiracy exists between the defendant and another over whom the court has jurisdiction are insufficient. Rather, evidence or facts must support the allegations of conspiracy." *Yoost*, 295 Mich App at 225 (citations omitted); see also *Walden v Fiore*, 571 US 277, 286; 134 S Ct 1115; 188 L Ed 2d 12 (2014) ("A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum.").

Turning to the allegations in the complaint and other documentary evidence, the contacts Easy Street had with Michigan can be fairly summed up as follows: Sometime before June 2020, Easy Street reached out to Leeds in Michigan concerning potential properties for sale in Illinois. After Leeds and plaintiffs selected a desirable property, the parties negotiated the various agreements virtually from their respective locales (plaintiffs and Leeds in Michigan and Easy Street in Illinois). Lastly, on two separate occasions, Leeds wired money on behalf of OM Capital from bank accounts in Michigan to Easy Street in Illinois for the purpose of making the earnest-money payments. It is against this backdrop of "contacts" that we address each claim in the complaint. See *Oberlies*, 246 Mich App at 437.

## B. LIQUIDATED DAMAGES

In Counts I, II, and V of the complaint, plaintiffs allege that the $800,000 paid by OM Capital to Easy Street constituted an unenforceable penalty or that Easy Street was otherwise unjustly enriched by its retention of the earnest money because it did not sell the property. It is important to note and reiterate here that the $800,000 paid to Easy Street was the amount due under the "non-fraudulent" agreements that presumably originated from Easy Street. In other words, the $800,000 represents the amount that OM

Capital was supposed to pay before Leeds fraudulently altered the agreements presented to plaintiffs to increase the price.

Plaintiffs did not allege sufficient facts nor come forward with sufficient evidence to demonstrate how Easy Street's contacts with Michigan harmed plaintiffs. Without a doubt, the allegations made by plaintiffs, if true, constitute various torts committed by Leeds in Michigan as it concerned his business relationship with plaintiffs. However, for purposes of the due process analysis, the mere fact that the parties entered into a contractual relationship is insufficient to confer limited personal jurisdiction in Michigan over Easy Street. See *Burger King*, 471 US at 478 (stating that a contract with an out-of-state party, alone, is insufficient to establish minimum contacts with the forum state). The gravamen of plaintiffs' allegations is that Easy Street is unlawfully holding money, obtained pursuant to contract, in Illinois. The injury to plaintiffs,[2] as alleged, are the result of unlawful actions taking place in Illinois, not Michigan, and the fact that one party to the transaction is a Michigan resident, standing alone, is too attenuated from the *established* contacts made by Easy Street to confer limited personal jurisdiction.

Similarly, we conclude that the exercise of jurisdiction over Easy Street would be unreasonable, because Michigan's interest in adjudicating these claims is weak in comparison to Illinois's interest. See *Jeffrey*, 448 Mich at 203. Counts I, II, and V of the complaint relate to whether Easy Street's retention of the earnest money deposits—paid under agreements that were governed by Illinois law and concerned property physically located in Illinois—constituted an illegal liquidated damages provision or otherwise unjustly enriched Easy Street. Illinois, as the state with jurisdiction over the property, has a superior interest to Michigan in resolving questions concerning the enforceability of contracts concerning that property.

In sum, even though Easy Street may have purposefully availed itself of Michigan, allowing limited personal jurisdiction in Michigan would not comport with fair play and substantial justice, and the trial court did not err when it granted summary disposition in Easy Street's favor as to Counts I, II, and V.

## C. CONVERSION

In Count III of the complaint, plaintiff alleged that Easy Street converted plaintiffs' earnest money by retaining it and, in Count IV, by aiding and abetting Leeds's conversion of the money. "Under the common law, conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc*, 497 Mich 337, 346; 871 NW2d 136 (2015). Similarly, under a statutory claim for conversion, an injured party may be awarded treble damages as a result of "[a]nother person's stealing or embezzling property or converting property to the other person's own use." MCL 600.2919a(1)(a). "[A] person may be guilty of a conversion by actively aiding or abetting or conniving with another in such an act." *Trail Clinic, PC v Bush*, 114 Mich App 700, 706; 319 NW2d 638 (1982). "The essential elements

---

[2] We question whether plaintiffs—separate from OM Capital—have standing to assert claims against Easy Street that originate from the agreements themselves, as the only parties to those agreements were OM Capital and Easy Street. In other words, it is not clear that plaintiffs suffered a harm separate from OM Capital as it relates to Easy Street's alleged improper retention of the earnest money deposit. Nevertheless, even if plaintiffs could demonstrate that they have standing to assert these claims, plaintiffs have not established that litigating the claims in Michigan comports with due process.

required for aiding-and-abetting liability are: (1) that an independent wrong occurred, (2) that the aider or abettor had knowledge of the wrong's existence, and (3) that substantial assistance was given to effecting that wrong." *Nicholl v Torgrow*, 330 Mich App 660, 675; 950 NW2d 535 (2019).

Similar to plaintiffs' liquidated damages claims, their statutory and common law conversion claims do not relate to the contract formation or negotiation stages and all the attendant contacts between Easy Street and OM Capital that occurred during those time periods. Rather, the allegations relate to what plaintiff contends occurred after the money transferred from OM Capital to Easy Street under the terms of the agreements—i.e., plaintiff demanded the return of the money and Easy Street declined the request. Easy Street's contacts with Michigan as the forum state as it relates to the conversion claims are simply too attenuated from the unenforceable penalty claims to satisfy due process.

Lastly, plaintiffs failed to adequately plead or come forward with facts establishing jurisdiction on the basis of the aiding and abetting conversion claim. Aiding and abetting is not a stand-alone tort but rather is, like conspiracy, a theory of joint and several liability. And, therefore, like a conspiracy claim, plaintiffs are required to do more than simply allege "aiding and abetting" to invoke the jurisdiction of Michigan. A bare allegation, however, is all that plaintiffs made concerning Easy Street's purported role in aiding and abetting Leeds. For example, plaintiffs do not allege that Leeds and Disser met in Michigan in furtherance of the scheme, or that Disser even contacted Leeds in Michigan concerning Leeds's alleged fraud. All that is alleged is that "Easy Street aided and abetted Leeds in concealing the stolen, embezzled and/or converted funds." The allegation, standing alone, is insufficient for purposes of conferring jurisdiction. See *Yoost*, 295 Mich App at 225 (citations omitted) ("[M]ere allegations that a conspiracy exists between the defendant and another over whom the court has jurisdiction are insufficient. Rather, evidence or facts must support the allegations of conspiracy."). Thus, the trial court did not err when it granted summary disposition in favor of Easy Street.

Affirmed. Easy Street, as the prevailing party, may tax costs. MCR 7.219(A).

/s/ Kirsten Frank Kelly
/s/ Kathleen Jansen
/s/ Thomas C. Cameron